# Illinois Official Reports

## Appellate Court

---

### *People v. Shepherd*, 2015 IL App (3d) 140192

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CHRISTIAN L. SHEPHERD, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-14-0192 |
| Filed | February 11, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for solicitation of murder for hire where defendant filed a motion to dismiss the indictment or to suppress evidence the State allegedly obtained by taking advantage of an attorney's lapse in ethical judgment when the attorney consulted with defendant about defendant's case but was not retained by defendant, and defendant's motion to suppress the contested evidence was granted in part and the State filed a certificate of impairment and an interlocutory appeal challenging the trial court's ruling, the appellate court reversed the trial court's ruling and remanded the case for further proceedings on the grounds that defendant failed to establish that the attorney ever received information that could be significantly harmful to defendant or that the two matters at issue were the same or similar. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 10-CF-1029; the Hon. Edward A. Burmilla, Jr., Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

James Glasgow, State's Attorney, of Joliet (Judith Z. Kelly (argued), of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Steven Varel (argued), of State Appellate Defender's Office, of Ottawa, for appellee.

Panel

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justices Lytton and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant, Christian L. Shepherd, was charged with solicitation of murder for hire (720 ILCS 5/8-1.2(a) (West 2010)). During pretrial proceedings, he filed a motion to dismiss the indictment or to suppress evidence that the State had allegedly obtained by taking advantage of a lapse in ethical judgment by an attorney that defendant had consulted with about the case but had not retained. After a hearing, the trial court granted the motion in part and suppressed the contested evidence. The State filed a certificate of impairment and brought this interlocutory appeal to challenge the trial court's ruling. We reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.

¶ 2                                    I. FACTS

¶ 3     On May 1, 2010, defendant was arrested and charged with aggravated criminal sexual assault (the sexual assault case). On May 4 and May 11, 2010, while defendant was in custody at the jail, he had two consultations by video with attorney Anthony Tomkiewicz about Tomkiewicz possibly representing defendant in the sexual assault case. Defendant had decided to retain Tomkiewicz and was going to have his father bring money into Tomkiewicz's office to pay the retainer.

¶ 4     During or around that same time period, on or leading up to May 13, 2010, defendant was allegedly discussing plans with a fellow inmate, Franklin Bryant, to have Bryant kill some or all of the witnesses in the sexual assault case. Bryant was in jail at the time for a felony unlawful possession of a weapon charge (the weapons offense or the weapons case). Defendant gave Bryant a map to the residence of one of the intended victims and a written statement that Bryant was supposed to read while standing over the intended victims at the time of the killings. For carrying out the killings, Bryant was to receive at least $900.

¶ 5     Unbeknownst to defendant, however, Bryant turned the documents over to police officers at the jail and told the officers what defendant was planning. Bryant agreed to wear a wire so that the police officers could get defendant on tape discussing and planning the murders. A

detective who was working on the case contacted Assistant State's Attorney Michael Knick for his assistance in the matter.

¶ 6　　Knick reviewed the State's file on the sexual assault case. The file indicated that defendant was represented by the public defender's office. Knick also reviewed the documents that Bryant had provided to the police. One of those documents, an inmate request form, indicated that in the weapons case, Bryant was represented by attorney Anthony Tomkiewicz, the same attorney that defendant was planning to retain in the sexual assault case. Knick contacted Tomkiewicz and asked him to come to his office to discuss Tomkiewicz's representation of Bryant.

¶ 7　　Tomkiewicz met with Knick later that day. Knick informed Tomkiewicz of the situation and told Tomkiewicz that Bryant wanted to wear a wire to obtain incriminating evidence against defendant. Knick did not know at the time that defendant had spoken to Tomkiewicz about possibly retaining Tomkiewicz as his attorney in the sexual assault case. When Tomkiewicz learned that defendant was the intended target of the wire, he told Knick that he had met with defendant about possible representation in the sexual assault case, that defendant was planning to retain him, but that defendant had not done so yet. Tomkiewicz told Knick further that based on the new information, he was not going to take defendant's case and that he would have his office contact defendant's father and tell him not to bring in the retainer. Tomkiewicz stated that Bryant had applied for a furlough so that he could see his dying mother and that the matter would be up in court the following day. Knick informed Tomkiewicz that the State would not object to Bryant's furlough request and that Bryant could be fitted with a wire prior to going back into the jail. Knick instructed Tomkiewicz to speak to Bryant about wearing the wire and told Tomkiewicz that the State would obtain a court-authorized overhear while Bryant's case was in court on his request for furlough.

¶ 8　　The following day, Knick met with Tomkiewicz at the courthouse and told Tomkiewicz to talk to Bryant to make sure that Bryant was still willing to cooperate before they went before the judge with the eavesdrop request. Tomkiewicz did so, Bryant agreed to wear the wire, and the State obtained the court-authorized overhear. In court, the State did not object to Bryant's furlough request. Bryant was released on furlough, and when he returned, he was fitted with a wire. After going back to the jail, Bryant obtained incriminating statements from defendant regarding defendant's plan to have Bryant kill the witnesses in his sexual assault case.

¶ 9　　On May 19, 2010, defendant was charged with several counts of solicitation of murder for hire (the solicitation case) in the instant case for his plan to have Bryant carry out the killings. During the pretrial proceedings in this case, defendant filed a motion to dismiss the indictment or, alternatively, to suppress the incriminating evidence that Bryant had obtained for the police. The motion was made as to both the sexual assault case and the solicitation case. In the motion, defendant cited Rule 1.18 of the Illinois Rules of Professional Conduct of 2010 (eff. Jan. 1, 2010) and alleged that Tomkiewicz owed a duty to defendant not to engage in an attorney-client relationship with Bryant when Bryant's interests were materially adverse to defendant's, even though no actual attorney-client relationship was formed between Tomkiewicz and defendant. Defendant alleged further that Tomkiewicz's continued representation of Bryant after Bryant agreed to wear a wire against defendant constituted a violation of defendant's sixth amendment right to effective assistance of counsel, a violation that the State was complicit in.

¶ 10      A nonevidentiary hearing on defendant's initial motion to dismiss and suppress was held in January 2013. After the arguments of the attorneys had concluded, the case was continued to another date for the trial court to render its decision. Prior to that time, Assistant State's Attorney Knick had not disclosed to the defense or to other assistant State's Attorneys involved in the case that he had met with Tomkiewicz prior to Bryant wearing the wire and that he had learned in that meeting that Tomkiewicz had consulted with defendant about Tomkiewicz possibly representing defendant in the sexual assault case. At the next court date, immediately before the trial court gave its decision, Knick disclosed that information to the trial court. Following the disclosure, the trial court made its initial ruling. As to the sexual assault case, the trial court suppressed the wire-recorded statements but denied suppression as to the documents that Bryant had obtained from defendant and had turned over to the police prior to Tomkiewicz's meeting with Knick. As to the solicitation case, the trial court denied defendant's motion without prejudice and gave defendant leave to file a second motion to dismiss or suppress in the solicitation case to add allegations regarding the information that had just been disclosed in court by Knick.

¶ 11      Defendant filed the second motion to dismiss or suppress in February 2013. The second motion contained many of the same allegations that were contained in the first motion but added new allegations to include the factual information that was disclosed in court by Knick. In the second motion, defendant again cited Rule 1.18 as the source of Tomkiewicz's ethical violation. In addition, for the hearing on the second motion, defendant subpoenaed Tomkiewicz to testify.

¶ 12      Tomkiewicz filed a motion to quash the subpoena and for sanctions against defendant and defense counsel. Attached to the motion to quash was Tomkiewicz's affidavit. In the affidavit, Tomkiewicz attested that: (1) he met with defendant at the jail twice by closed-circuit television to discuss defendant possibly retaining him in the sexual assault case; (2) at no time did defendant and Tomkiewicz discuss the facts of the sexual assault case; (3) defendant and Tomkiewicz only discussed what defendant's charges were, what the law was in that area, what the possible sentences were, the criminal court process in general, the qualifications of Tomkiewicz and his firm, and the rate that Tomkiewicz charged for his services; (4) Tomkiewicz specifically instructed defendant, as he did with all his interviews and meetings at the jail's video center, not to say anything about any of the facts of the case due to the lack of privacy at the center; (5) defendant agreed and complied with that instruction; (6) defendant informed Tomkiewicz that his family would contact Tomkiewicz to make arrangements to hire Tomkiewicz's firm; (7) defendant and Tomkiewicz did discuss the fact that Bryant was a current client of Tomkiewicz's firm as defendant and Bryant were housed in the same unit of the jail, were on friendly terms, and were both interested in the services of Tomkiewicz's firm at the same time; (8) Assistant State's Attorney Knick contacted Tomkiewicz on May 13, 2010, and asked Tomkiewicz to come to his office to discuss Tomkiewicz's representation of Bryant in the weapons offense; (9) Tomkiewicz's firm had already been retained by Bryant and were in the process of arranging an emergency furlough for the next day for Bryant to see his dying mother; (10) at that meeting, Knick informed Tomkiewicz, and Tomkiewicz learned for the first time, that defendant had solicited Bryant; (11) Tomkiewicz informed Knick that defendant was going to hire Tomkiewicz's firm, but that now Tomkiewicz would have to decline; (12) Knick informed Tomkiewicz that Bryant had already agreed to wear a wire against defendant and that Bryant

wanted to be released from jail once that was accomplished out of fear of retaliation from defendant; (13) Knick asked Tomkiewicz if he had any objection to law enforcement officers talking to Bryant about cooperating against defendant, and Tomkiewicz said that he did not as long as Bryant wanted to do so; (14) Knick never asked Tomkiewicz for his cooperation or involvement regarding any investigation or prosecution of defendant; (15) Knick informed Tomkiewicz that no specific promises were being made as to any disposition in Bryant's case; (16) Tomkiewicz did not know the exact date and time that defendant solicited Bryant for a murder, only that it happened sometime after Tomkiewicz's last communication with defendant and before Tomkiewicz's meeting with Knick; (17) upon leaving the meeting with Knick, Tomkiewicz had his firm immediately contact defendant's family and inform them that the firm would decline to represent defendant due to a potential conflict of interest and not to bring the firm a retainer; (18) Tomkiewicz had no further contact with defendant or his family; (19) Bryant did not agree to wear the wire after his court appearance on May 14, 2010, but, rather, he had already resolved to do that on his own; (20) Tomkiewicz never represented defendant and Bryant in the same or a substantially related matter; (21) Tomkiewicz never learned any information about either defendant's case or Bryant's case that could be harmful to the other in any matter; (22) Tomkiewicz never shared any information about defendant and his case with Bryant or vice versa; and (23) neither Tomkiewicz nor his firm had any involvement in Bryant's cooperation with law enforcement against defendant, nor did Tomkiewicz or his firm discuss the details of Bryant's cooperation with law enforcement in any matter other than the fact that Bryant wanted to be released from jail after he wore the wire because he was afraid of retaliation from defendant and that Bryant hoped that he would be given some consideration in his pending case.

¶ 13 A hearing was held on Tomkiewicz's motion to quash the subpoena and for sanctions against defendant and defense counsel. After arguments on the matter, the trial court denied the motion to quash the subpoena and for sanctions. In response to Tomkiewicz's concerns over attorney-client confidentiality, the trial court found as part of its ruling that by calling Tomkiewicz as a witness, defendant would be waving his sixth amendment rights as to the confidentiality of his communications with Tomkiewicz. The trial court continued defendant's subpoena of Tomkiewicz to the hearing date on the second motion to dismiss or suppress.

¶ 14 A hearing was held on the second motion to dismiss or suppress in February 2014. At the hearing, defendant first called the assistant State's Attorney who had drafted the State's response to the initial motion for some brief preliminary information, most notably, to confirm that the State had alleged in its response that the only way for the State to know that an attorney, such as Tomkiewicz, had consulted with a particular defendant, was for the State to search all of the jail records to make sure that no attorney had come in to see that particular defendant.

¶ 15 Defendant then called Assistant State's Attorney Knick to the witness stand. Knick testified to many of the facts as set forth above. In addition to those facts, Knick stated because of Bryant's agreement to wear the wire, the State's Attorney's office did not object to Bryant's request for a furlough, which was contrary to the State's usual procedure on furlough requests. As of the date of Knick's testimony, Bryant's case was still pending. He had pled guilty but had not been sentenced. Since that time, Bryant had picked up another case, a Class 4 felony possession of cocaine, and was out on bond on that case, which may

have been another concession that was given to Bryant for wearing the wire in the solicitation case.

¶ 16    Knick testified further that on June 16, 2010, defendant was indicted in the solicitation case. Part of the evidence presented to the grand jury was that Bryant was wearing a wire which captured the incriminating statements made by defendant. Knick was aware of the allegation that the State had made in its response to defendant's first motion to dismiss or suppress, which was drafted by a different assistant State's Attorney, that the only way for the State to know that Tomkiewicz had consulted with defendant was for the State to search all of the jail records regarding defendant. Knick stated that he read the argument as a legal argument that was being made in response to certain paragraphs in defendant's motion but acknowledged that he should have told the other assistant State's Attorney at that time that he had met with Tomkiewicz and that he was aware that Tomkiewicz had consulted with defendant. Knick did not disclose that information to the other assistant State's Attorneys involved in the solicitation case until about 10 or 15 minutes before he disclosed it in court and did not disclose that information to defense counsel at any point prior to that time. Before that point, Knick did not think that his meeting with Tomkiewicz was an issue in this case.

¶ 17    Knick initially testified that he contacted Tomkiewicz as a courtesy but acknowledged, after further questioning from the court, that he was required to call Tomkiewicz because he was going to try to work out some type of arrangement or deal to secure Bryant's cooperation in the matter. According to Knick, Tomkiewicz did not say anything to Knick to encourage him to use Bryant in that capacity. Tomkiewicz did not reveal any of his discussions with defendant to Knick and specifically told Knick that he was not going to tell Knick anything that any of his clients and he had talked about. Prior to obtaining the overhear, Knick instructed Tomkiewicz to talk to Bryant and to make sure that Bryant was on board with cooperating. Tomkiewicz did so. On the eavesdrop application, Knick appeared before the judge with Bryant and with the police detective who was working on the solicitation case. Tomkiewicz was not present in the room at that time.

¶ 18    After Knick's testimony, the defense rested. The defense did not call defendant to testify in the hearing on the motion. In addition, despite having overcome Tomkiewicz's motion to quash the subpoena, the defense did not call Tomkiewicz to testify. The State also did not call, or seek to call, Tomkiewicz to testify at the hearing.

¶ 19    At the conclusion of the hearing, the trial court granted defendant's second motion to dismiss or suppress in part and denied it in part. In so doing, the trial court found, among other things, that: (1) the State took advantage of Tomkiewicz's ethical lapse, albeit to potentially save lives; (2) defendant was past the point of merely meeting with Tomkiewicz and was at the point where he was going to retain Tomkiewicz to represent him in the sexual assault case; (3) as soon as defendant's name was interjected into the conversation between Knick and Tomkiewicz, the conversation should have come to a "screeching halt"; (4) incriminating information against defendant was gained by the State as a direct result of the ethical lapse on the part of Tomkiewicz; and (5) suppression of the evidence, rather than dismissal of the indictment, was the appropriate sanction because even without the improperly obtained evidence, there was sufficient properly obtained evidence presented to the grand jury to support the indictment. As a result of its findings, the trial court suppressed the wire-recorded statements in the solicitation case as well. Consistent with its ruling on the

first motion to dismiss or suppress, the trial court did not suppress the documents that defendant provided to Bryant that Bryant turned over to the police (evidence obtained prior to Tomkiewicz's meeting with Knick). The State filed a certificate of impairment and a notice of appeal in the instant case to challenge the trial court's ruling.

¶ 20                                    II. ANALYSIS

¶ 21      On appeal, the State argues that the trial court erred in granting defendant's motion to suppress the wire-recorded statements in the solicitation case.[1] The State asserts that the motion to suppress should not have been granted because: (1) defendant failed to prove two of the elements necessary to show that a violation of Rule 1.18 occurred; and (2) even if an ethics violation did occur, suppression was not an appropriate remedy under the circumstances of this case. Regarding the first assertion–the lack of proof of a violation–the State contends that at the hearing on the motion, no evidence was presented to establish that Tomkiewicz used, revealed, or received confidential information that could be significantly harmful to defendant in the sexual assault case. According to the State, it was impossible for the trial court to even make that determination without first knowing what information was conveyed by defendant to Tomkiewicz during their video consultations at the jail–information that was never provided at the hearing in this case. The State contends further that defendant also failed to establish the "same or substantially similar" element of Rule 1.18 because the matter in which Tomkiewicz represented Bryant–the weapons offense case–was not the same or substantially similar to the matter about which Tomkiewicz consulted with defendant–the sexual assault case. In making that contention, the State argues for a narrow interpretation of the "same or substantially similar" language.

¶ 22      Regarding the second assertion–that suppression was not an appropriate remedy under the circumstances of this case–the State contends that there is no case law to suggest that an ethical violation by an attorney for one of the State's witnesses makes a defendant's voluntary incriminating statements to that witness inadmissible. The State points out that the purpose of the exclusionary rule is to deter police misconduct, not to deter the improper or unethical conduct of an attorney for one of the State's witnesses. The State contends further that any alleged ethical violation by Tomkiewicz did not affect Bryant's decision to wear a wire against defendant in this case because Bryant had already decided to do so before Tomkiewicz was even informed of the situation.

¶ 23      Defendant argues that the trial court's ruling was proper and should be upheld. Defendant asserts first that this court should affirm the trial court's ruling on a basis that was not considered by the trial court or argued by the State–that Tomkiewicz had an actual attorney-client relationship with defendant and that Tomkiewicz committed ethical violations of Rule 1.7 (conflict of interest rules as to current clients) and Rule 1.9 (attorney's duties to a former client) of the Illinois Rules of Professional Conduct of 2010 (eff. Jan. 1, 2010) when he represented both defendant and Bryant, who had conflicting interests. Defendant asserts further that the State took advantage of that ethical violation to secure incriminating evidence against defendant, even though the State knew of the attorney-client relationship between Tomkiewicz and defendant.

_____

[1]For the most part, from this point forward, we will refer to the motion as simply a motion to suppress.

¶ 24    Second, and in the alternative, defendant asserts that he presented sufficient evidence at the hearing on the motion to suppress to establish that a violation of Rule 1.18 occurred and that the trial court's ruling to that effect was not against the manifest weight of the evidence. In making that assertion, defendant claims that he was not required at the hearing to reveal the confidential information that he communicated to Tomkiewicz during their consultations in order to prove that Tomkiewicz had violated Rule 1.18. As support for that assertion, defendant points to the language of the rule itself and states that nowhere in that language is such a requirement contained. Defendant suggests instead that a Rule 1.18 situation should be treated similarly to a Rule 1.9 situation where the trial court is allowed to infer that information "material to the matter" (specific language of Rule 1.9) was communicated to the attorney if, considering the services that the attorney rendered to the former client (specific language of Rule 1.9), the attorney ordinarily would have learned that type of information. Ill. R. Prof. Conduct (2010) R. 1.9 (eff. Jan. 1, 2010). Defendant contends that the same approach should be applied in the context of a Rule 1.18 situation and that the trial court in that situation should be allowed to infer that information that could be "significantly harmful" (specific language of Rule 1.18) to the prospective client (specific language of Rule 1.18) was communicated to the attorney if, under the circumstances involved, the attorney would have normally received that type of information in his consultation with the prospective client. Ill. R. Prof. Conduct (2010) R. 1.18 (eff. Jan. 1, 2010). Defendant contends further that policy considerations favor the application of such an approach in a Rule 1.18 situation, especially in the context of a criminal case, where requiring a defendant to reveal confidential information that he had communicated to his attorney would raise serious concerns, would be fundamentally unfair, and would violate due process.

¶ 25    More specifically as to this particular case, defendant asserts that the evidence presented at the hearing was sufficient to show that an attorney in Tomkiewicz's position would ordinarily have acquired confidential information that could be significantly harmful to defendant. According to defendant, an attorney in Tomkiewicz's position who was contemplating representing a defendant in a criminal case would ordinarily discuss the facts of the case with the defendant because the attorney would need to know that information to decide whether to take the defendant's case and how much to charge. Defendant continues further that learning the facts of the case would ordinarily include a discussion about the inculpatory and exculpatory evidence that existed and even, possibly, an admission of guilt. In the present case, such information could be significantly harmful to defendant not only in the sexual assault case, but in the solicitation case as well because of the close connection between the two cases (the solicitation case arose because defendant was allegedly planning to have the witnesses in the sexual assault case killed). In making that contention, defendant notes that the information contained in Tomkiewicz's affidavit, which the State relies on in its argument on appeal, was never admitted into evidence during the hearing on either of the two motions to dismiss or suppress and that Tomkiewicz was never called to testify as a witness, even though the State had the ability to do so. Defendant asks, therefore, that we not consider Tomkiewicz's affidavit in making our ruling on this issue.

¶ 26    Third, defendant asserts that contrary to the claim of the State, the evidence presented at the hearing on the second motion to dismiss or suppress was also sufficient to prove the same or substantially similar element of Rule 1.18. In making that assertion, defendant suggests a broader interpretation of the "same or substantially similar" language than is suggested by

the State. Defendant contends that the "same or substantially similar" element was satisfied in the instant case because the evidence showed that Tomkiewicz assisted Bryant (the current client) in his efforts to curry favor from the State in the weapons case (the matter in which Tomkiewicz represented Bryant) by obtaining evidence that would incriminate defendant (the prospective client) in a plot to have the witnesses in the sexual assault case (the matter about which Tomkiewicz consulted with defendant) killed. Defendant contends further that under those particular circumstances, there was a substantial risk that any confidential information that Tomkiewicz would have ordinarily learned in his consultations with defendant would materially advance Bryant's position in his own case and his desire to curry a favorable deal from the State by providing incriminating evidence against defendant.

¶ 27　　Fourth, defendant asserts that the trial court's remedy of suppressing the evidence was appropriate under the circumstances of the present case and should be upheld because the remedy serves the interests of justice by deterring State misconduct. According to defendant, the trial court's decision to suppress the evidence was appropriately based upon two factual findings that were not against the manifest weight of the evidence: (1) that Tomkiewicz's conduct affected Bryant's decision to wear a wire against defendant; and (2) that the State was implicated in the ethical violation. Defendant asserts further in support of the appropriateness of the trial court's decision that the trial court's ruling was carefully tailored to have the desired deterrent effect while still allowing the State to present any properly obtained evidence. For all of the reasons stated, defendant asks that we affirm the trial court's ruling suppressing the wire-recorded statements in the solicitation case.

¶ 28　　A reviewing court applies a two-part standard of review to a trial court's ruling on a motion to suppress evidence. *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). The trial court's findings of fact are given great deference and will not be reversed on appeal unless they are against the manifest weight of the evidence. *Luedemann*, 222 Ill. 2d at 542. A deferential standard of review applies to the trial court's findings of fact because the trial court has the opportunity to observe the demeanor and testimony of the witnesses firsthand and, thus, is in a better position than the reviewing court to judge the witnesses' credibility, to determine the weight to be given to testimony, to decide the inferences to be drawn from the evidence, and to resolve any conflicts in the evidence. See *People v. Jones*, 215 Ill. 2d 261, 268 (2005); *People v. Frazier*, 248 Ill. App. 3d 6, 13 (1993). However, as to the trial court's ultimate legal ruling of whether suppression is warranted, *de novo* review applies. *Luedemann*, 222 Ill. 2d at 542-43; *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). The reviewing court is free to make its own assessment of that legal issue, based upon the findings of fact, and to draw its own conclusions. See *Luedemann*, 222 Ill. 2d at 542.

¶ 29　　The Rules of Professional Conduct are rules of reason that provide a framework for the ethical practice of law. Ill. R. Prof. Conduct (2010), Scope, ¶¶ 14, 16 (eff. Jan. 1, 2010); see also *Horwitz v. Holabird & Root*, 212 Ill. 2d 1, 16-17 (2004) (referring to a previous version of the preamble to the rules as stating that the law is a public trust and that lawyers are the trustees of the judicial system). The rules recognize that "[a] lawyer, as a member of the legal profession, is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice." Ill. R. Prof. Conduct (2010), Preamble, ¶ 1 (eff. Jan. 1, 2010). Rule 1.18, which is at issue in the instant case, describes the duties that an attorney owes to a prospective client as follows:

"(a) A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.

(b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.

(c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

(d) When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:

(1) both the affected client and the prospective client have given informed consent, or

(2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and that lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom." Ill. R. Prof. Conduct (2010) R. 1.18 (eff. Jan. 1, 2010).

See also Restatement (Third) of the Law Governing Lawyers § 15 (2000).

¶ 30    In the instant case, it is clear that defendant was a prospective client of Tomkiewicz as defined in Rule 1.18(a). See Ill. R. Prof. Conduct (2010) R. 1.18(a) (eff. Jan. 1, 2010). Although defendant tries to assert for the first time on appeal that he actually formed an attorney-client relationship with Tomkiewicz and that different rules of professional conduct apply, as the State correctly points out, that argument was not made before the trial court or developed in the record. We, therefore, reject defendant's argument that trial court's suppression order can be affirmed on that basis. See *People v. Johnson*, 208 Ill. 2d 118, 134 (2003) (the supreme court recognized that in some cases, it may be inappropriate to address an argument advanced in support of a judgment on appeal because the factual basis for that argument is not established in the record).

¶ 31    Having ruled in that regard, we turn our focus to Rule 1.18, specifically subparagraph (c), a violation of which was alleged in the instant case by defendant and found by the trial court. Upon considering the rule, we find that defendant failed in his burden to establish that Tomkiewicz received in his consultations with defendant information that could be significantly harmful to defendant in either the sexual assault case or the solicitation case. See Ill. R. Prof. Conduct (2010) R. 1.18(c) (eff. Jan. 1, 2010); *People v. Cregan*, 2014 IL 113600, ¶ 23 (at a hearing on a motion to suppress evidence, the burden is on the defendant to show that suppression is warranted); see also *O Builders & Associates, Inc. v. Yuna Corp. of NJ*, 19 A.3d 966, 975-78 (N.J. 2011) (in a case where a former prospective client sought disqualification of an attorney under New Jersey's version of Rule 1.18, the New Jersey Supreme Court upheld the trial court's denial of the motion to disqualify, finding, among

other things that the former prospective client had failed to establish that the attorney had received confidential information that was significantly harmful to the prospective client in the current matter). In the instant case, defendant presented absolutely no evidence to that effect as neither Tomkiewicz nor defendant testified at the hearing on the second motion to dismiss or suppress. Instead, defendant relied entirely upon speculation as to information that Tomkiewicz might have learned. In our opinion, that speculation was not enough to establish that a violation of Rule 1.18 occurred. See *O Builders & Associates, Inc.*, 19 A.3d at 975-78. Indeed, the comments to Rule 1.18 recommend that an attorney limit the initial interview with a prospective client to only that information that is reasonably necessary for the attorney to determine whether he or she will take the case, so as to avoid acquiring disqualifying information from the prospective client. See Ill. R. Prof. Conduct (2010) R. 1.18, Comment 4 (eff. Jan. 1, 2010). In concluding as we have on this issue, we are mindful of the cautions set forth in the scope of the Rules–that the purpose of the Rules can be subverted when they are invoked by an opposing party as a procedural weapon and that a potential violation of a rule does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rules. See Ill. R. Prof. Conduct (2010), Scope, ¶ 20 (eff. Jan. 1, 2010).

¶ 32    Because we have determined that defendant failed to establish that Tomkiewicz received information that could be significantly harmful to defendant, we need not consider the other element of Rule 1.18(c), the proof of which the State also contests, that the two matters were the same or substantially similar. Defendant failed to establish that a violation of Rule 1.18 occurred and his motion to suppress evidence should have been denied on that basis.

¶ 33                                   III. CONCLUSION

¶ 34    For the above-stated reasons, we reverse the judgment of the circuit court of Will County and remand this case for further proceedings consistent with this opinion.

¶ 35    Reversed and remanded.