2018 IL App (3d) 160724

Opinion filed March 8, 2018

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2018

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellant, | ) ) | Appeal Nos. 3-16-0724 |
| v. | ) ) | 3-16-0725 Circuit Nos. 10-CF-903 |
| CHRISTIAN L. SHEPHERD, | ) ) | 10-CF-1029 |
| Defendant-Appellee. | ) ) | Honorable Daniel L. Kennedy, Judge, Presiding. |

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Presiding Justice Carter concurred in the judgment and opinion.
Justice Wright specially concurred, with opinion.

**OPINION**

¶ 1     This appeal raises two questions: (1) Did attorney Anthony Tomkiewicz violate some ethical duty owed to defendant? and (2) If so, did this alleged ethical lapse trigger the exclusionary rule? We answer the questions no and no. In a previous appeal (*People v. Shepherd*, 2015 IL App (3d) 140192), a panel of this court held that defendant failed to establish that counsel violated Rule 1.18 of the Illinois Rules of Professional Conduct of 2010 (Ill. R. Prof'l Conduct (2010) R. 1.18 (eff. Jan. 1, 2010)) "and his motion to suppress evidence should have been denied on that basis." *Shepherd*, 2015 IL App (3d) 140192, ¶ 32. On remand, defendant

shifted gears and argued that counsel violated Rules 1.7 and 1.9 instead of Rule 1.18. The trial court, again, utilized the exclusionary rule to suppress evidence based on counsel's alleged violation. We now reverse the trial court for a second time.

¶ 2                                                  BACKGROUND

¶ 3        On May 3, 2010, the State charged defendant, Christian Shepherd, with one count of criminal sexual assault and three counts of criminal sexual abuse. The State's information alleged that between November 4, 2006, and June 1, 2008, defendant (born Jan. 16, 1979) "knowingly placed his mouth on the penis of A.V., a minor," who was "at least 13 years of age but under 18 years of age" while defendant held a position of trust, authority, or supervision over A.V. Count II alleged that defendant sexually gratified himself in front of A.V. during the same time period. Count III alleged that defendant sexually gratified himself in front of A.V. between January 1, 2004, and December 31, 2005, when A.V. "was under 13 years of age."

¶ 4        The parties agree that defendant met with attorney Anthony Tomkiewicz at the Will County jail on May 4 and May 11, 2010, to discuss legal representation in the sex offense case. During these meetings, defendant neither paid a retainer nor signed a client agreement. However, defendant told Tomkiewicz that his father would pay the retainer.

¶ 5        Tomkiewicz represented Franklin Bryant, also an inmate in the Will County jail. On May 14, less than two weeks after the State charged defendant, Bryant informed sheriff's detectives that defendant solicited him to kill four witnesses in the sex offense case—two investigating officers from the Crest Hill Police Department, A.V., and A.V.'s mother. Bryant also turned over documents that defendant gave him, which included a map to A.V.'s mother's house and a note to read to her before he killed her.

¶ 6    The sheriff's detectives relayed Bryant's information to Assistant State's Attorney Michael Knick. Knick asked Bryant to wear a wire in order to gather more evidence against defendant. Before agreeing to cooperate, Bryant asked to speak with his lawyer. Knick reviewed Bryant's file, which indicated that Tomkiewicz represented him. Knick arranged a meeting with Tomkiewicz on May 14. Knick also reviewed defendant's file, which indicated that the public defender's office represented him—the assistant public defender filed a speedy trial demand on defendant's behalf shortly after the State filed charges.

¶ 7    During their meeting, Knick and Tomkiewicz discussed Bryant cooperating with the investigation against defendant. Before the meeting, Tomkiewicz did not know that defendant contacted Bryant or that Bryant contacted sheriff's detectives. Tomkiewicz disclosed to Knick that he met with defendant twice about representing him in the sex offense case. However, Tomkiewicz indicated that he would not represent defendant or file an appearance in his case. Tomkiewicz then informed defendant's father that he would not accept a retainer or represent defendant.

¶ 8    Tomkiewicz met with Bryant the same day. He also filed an appearance in Bryant's pending criminal case. After the meeting, Bryant agreed to cooperate if the State agreed to his furlough request to see his dying mother. The State agreed. Tomkiewicz did not attend the hearing where the court authorized the State's eavesdrop request. Knick fitted Bryant with the wire before he reentered the correctional facility's general population on May 15. That day, Bryant recorded a conversation in which defendant "wished to hire Bryant to kill witnesses."

¶ 9    The State charged defendant with four counts of soliciting murder for hire. The criminal complaint alleged that defendant offered Franklin Bryant $6000 to murder the four witnesses in

defendant's pending sex offense case. A grand jury issued a bill of indictment on the murder for hire and sex offense charges against defendant.

¶ 10 In January 2013, defendant filed his first "Motion to Dismiss or in the Alternative Suppress Evidence." Defendant's motion sought to suppress the contents of Bryant's recording under the exclusionary rule. Defendant claimed that Tomkiewicz violated Rule 1.18, which prohibits attorneys from disclosing communications from prospective clients, even if no attorney-client relationship ensues. Ill. R. Prof'l Conduct (2010) R. 1.18(b) (eff. Jan. 1, 2010). It also prohibits attorneys from representing "a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter." Ill. R. Prof'l Conduct (2010) R. 1.18(c) (eff. Jan. 1, 2010).

¶ 11 The trial court concluded that Tomkiewicz violated Rule 1.18 and suppressed Bryant's recording in the sex offense case, but not in the murder-for-hire case. During the hearing, Knick informed the court that he met with Tomkiewicz to discuss Bryant's cooperation. In light of Knick's disclosure, the court allowed defendant to file an amended pleading.

¶ 12 On February 20, 2013, defendant filed his amended motion. He argued that the meeting between Knick and Tomkiewicz rendered Bryant's recording inadmissible in the murder-for-hire case. Defendant argued that the State furthered Tomkiewicz's ethical violation in order to persuade Bryant to cooperate with the State's investigation and that the State's misconduct justified excluding the recording in the murder-for-hire case under the exclusionary rule.

¶ 13 The court found that Knick took advantage of Tomkiewicz's "ethical lapse" to obtain evidence against defendant. The court suppressed Bryant's recording in both cases.

¶ 14    On appeal (*Shepherd*, 2015 IL App (3d) 140192), a panel of this court reversed the trial court's order. Defendant's evidence failed to establish that Tomkiewicz violated Rule 1.18. Defendant never proved that Tomkiewicz "received confidential information that was significantly harmful to the prospective client." *Id.* ¶ 31. Defendant's "speculation as to information that Tomkiewicz might have learned" could not justify suppressing evidence in either case. *Id.*

¶ 15    On remand, defendant filed a third motion to suppress. This time he claimed that Tomkiewicz and defendant established an attorney-client relationship. After they formed the relationship, Tomkiewicz allegedly engaged in a conflict of interest by representing Bryant. See Ill. R. Prof'l Conduct (2010) Rs. 1.7, 1.9 (eff. Jan. 1, 2010). Defendant also alleged that the State furthered this conflict of interest, since Tomkiewicz acted as the State's agent. Defendant asked the court to suppress Bryant's recording under the exclusionary rule.

¶ 16    The motion claimed that defendant developed "subjective expectations" that he and Tomkiewicz formed an attorney-client relationship prior to May 14, 2010, the date Tomkiewicz discovered Bryant provided the State with information that incriminated defendant. However, the motion conceded that "Tomkiewicz was not aware that Bryant had met with law enforcement or intended to cooperate with them regarding the Defendant" prior to meeting with Knick.

¶ 17    At the hearing, defendant testified that he discussed the sex offense case with Tomkiewicz during their May 4, 2010, meeting. Specifically, defendant told Tomkiewicz that police coerced his confession. Tomkiewicz discussed filing a motion to suppress the confession. During the same meeting, defendant agreed to pay Tomkiewicz an $8000 retainer. Defendant considered Tomkiewicz his attorney after the May 4 meeting.

¶ 18    Defendant also testified that his father intended to pay the retainer. Although on May 14 Tomkiewicz instructed defendant's father not to pay the retainer, defendant's father waited weeks to inform defendant that Tomkiewicz refused to represent him. Defendant still believed that Tomkiewicz represented him on May 15, when Bryant obtained the recorded statements.

¶ 19    Tomkiewicz testified that both meetings with defendant took place by video in the correctional facility's visitor center. Tomkiewicz spent most of the first meeting discussing his background and legal experience. They did not discuss the case's underlying facts. Tomkiewicz offered no specific legal advice. However, he admitted that "it would not be unusual" for him to discuss filing a motion to suppress, even in a consultation, if a potential client mentioned coerced statements.

¶ 20    Tomkiewicz agreed to represent defendant once he paid the retainer fee and signed the client agreement. In his practice, Tomkiewicz believed the attorney-client relationship formed only after a potential client completed these tasks. Tomkiewicz never disclosed defendant's communications to Bryant or the State before or after Bryant recorded defendant's statements.

¶ 21    The court found that Tomkiewicz and defendant formed an attorney-client relationship based on defendant's subjective expectations. The court also determined that Tomkiewicz violated Rules 1.7 and 1.9. In its findings, the court determined that Bryant "was acting as an agent of the State" and Tomkiewicz "aided and abetted in that." The State obtained defendant's recorded statements in violation of his "due process rights and the right to effective assistance of counsel." The court suppressed "all of the evidence that was obtained from the wearing of the wire by Mr. Bryant in his conversations with *** defendant in both the sexual assault case and the murder for hire case." The State now appeals the suppression order.

¶ 22                                ANALYSIS

¶ 23         We employ two standards in reviewing a trial court's order to suppress evidence. We review the trial court's factual findings for manifest error, and we review the court's legal conclusion to suppress evidence *de novo*. *People v. Pitman*, 211 Ill. 2d 502, 512 (2004). This appeal presents two questions. First, did Tomkiewicz commit an ethical violation? If so, did the violation trigger the exclusionary rule? The answer to both questions is no.

¶ 24                             I. Ethical Violation

¶ 25         Defendant claims and the trial court found that Tomkiewicz violated Rules 1.7 and 1.9 of the Illinois Rules of Professional Conduct of 2010 (Ill. R. Prof'l Conduct (2010) Rs. 1.7, 1.9 (eff. Jan. 1, 2010)). In relevant part, Rule 1.7 prohibits lawyers from representing a client directly adverse to another *current* client (Ill. R. Prof'l Conduct (2010) R. 1.7 (eff. Jan. 1, 2010)); Rule 1.9 forbids lawyers from representing a client with interests "materially adverse" to those of a *former* client in "the same or a substantially related matter" (Ill. R. Prof'l Conduct (2010) R. 1.9 (eff. Jan. 1, 2010)). For either rule to apply, defendant needed to establish that he and Tomkiewicz had formed an attorney-client relationship.

¶ 26         Although an attorney-client relationship requires no formal written agreement or payment (*Herbes v. Graham*, 180 Ill. App. 3d 692, 698-99 (1989); *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1318 (7th Cir. 1978)), both the attorney and the client must express their intent to form it. The relationship is voluntary and contractual; it requires both parties' consent. *Rubin & Norris, LLC v. Panzarella*, 2016 IL App (1st) 141315, ¶ 37. Because the relationship is consensual, the client must manifest authority for the attorney to act on his behalf, and the attorney must accept it. *People v. Simms*, 192 Ill. 2d 348, 382 (2000).

¶ 27        In *Simms*, the defendant's wife stated in an affidavit that she spoke to an attorney three times about representing the defendant at his sentencing hearing—he faced the death penalty. The attorney agreed to represent the defendant for $15,000, including a 30% retainer. The defendant's wife eventually told the attorney that she could not raise the money. The attorney replied "that she did not give free advice and there was nothing more to talk about." *Id.* at 383. Defendant never paid the attorney's retainer, nor did he ask the trial court to appoint the attorney as counsel. The supreme court concluded that the wife's testimony, even if true, failed to establish an attorney-client relationship between the defendant and the attorney. *Id.* "Consequently, defendant did not have a right to conflict-free representation from [the attorney]." *Id.*

¶ 28        Here, the record shows that Tomkiewicz's agreement to represent defendant was contingent on defendant paying the retainer fee and signing a contract. Defendant never testified that he manifested authority for Tomkiewicz to act on his behalf, or that Tomkiewicz manifested acceptance of this authority. They never discussed the facts of his case or any specific defense strategy. Defendant merely stated that he subjectively considered Tomkiewicz his lawyer. *Simms* indicates that a party's subjective belief is not enough to form a consensual attorney-client relationship. *Id.* at 382-83.

¶ 29        We also note that defendant's claim that Tomkiewicz acted unethically defies common sense, "and common sense often makes good law." *Peak v. United States*, 353 U.S. 43, 46 (1957). Even had defendant told Tomkiewicz that he intended to solicit someone to murder witnesses in the sex offense case, Rule 1.6 would have *required* Tomkiewicz to disclose the communication to authorities. Rule 1.6(c) states, "A lawyer shall reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary to prevent

8

reasonably certain death or substantial bodily harm." Ill. R. Prof'l Conduct (2010) R. 1.6(c) (eff. Jan. 1, 2010). A client who seeks to commit a future crime or fraud "will have no help from the law." See *Clark v. United States*, 289 U.S. 1, 15 (1933); *People v. Radojcic*, 2013 IL 114197, ¶¶ 42-43. The ethical rules do not protect defendant's incriminating statements even if he made them to his attorney. Statements regarding intent to murder witnesses are simply not privileged. Yet, defendant argues that the ethical rules protect him from statements he made to a fellow inmate. Regardless of whom Tomkiewicz represented, the ethical rules do not protect defendant's murder-for-hire plot. We find no ethical violation in this record.

¶ 30                                II. Exclusionary Rule

¶ 31        Assuming that Tomkiewicz committed some ethical violation, as far as we can tell, we would be the first reviewing court in the free world to find that defense counsel's ethical violation triggers the exclusionary rule. In the first appeal, defendant argued that Tomkiewicz violated Rule 1.18. A panel of this court reversed the trial court's suppression order after finding that defendant failed to prove the ethical violation. On remand, defendant convinced the trial court that Tomkiewicz violated Rules 1.7 and 1.9, which required suppressing Bryant's recording. In desperate hope that it might avoid a third interlocutory appeal, we hold that nothing Tomkiewicz did, based on the record before us, triggered the exclusionary rule.

¶ 32        Defendant correctly recognizes that only "the State's wrongdoing" justifies suppressing evidence under the exclusionary rule; the purpose of the rule is to deter police (or the State's) misconduct. See *United States v. Leon*, 468 U.S. 897, 916 (1984). However, the Illinois Rules of Professional Conduct of 2010 specifically forbid parties from using ethical violations as "procedural weapons" in litigation. See Ill. R. Prof'l Conduct (2010), Preamble, ¶¶ 19-20. The exclusionary rule cannot apply unless the State or the State's agent wrongfully obtains evidence.

¶ 33    Defendant argues that the State "played a lead role in facilitating the [Illinois Rules of Professional Conduct] violations in this matter." Once he knew that Tomkiewicz met with defendant, Knick should have required Tomkiewicz to withdraw as Bryant's attorney or pursued alternate investigative methods. Because Knick took neither course, defendant claims that Tomkiewicz improperly acted as the State's agent and deprived defendant of his constitutional rights to counsel and a fair trial. No!

¶ 34    Tomkiewicz never acted as the State's agent. Meetings between Tomkiewicz and defendant had nothing to do with the solicitation or Bryant's decision to aid police. Had Tomkiewicz withdrawn as Bryant's attorney, Bryant no doubt would have retained another attorney; the result would have been the same. Tomkiewicz did what any defense attorney would have done—allowed Bryant to voluntarily cooperate with the State. That is, defendant suffered no prejudice as a result of anything Tomkiewicz did or failed to do. No evidence indicates that Bryant's cooperation with the State or defendant's recorded statements resulted from Tomkiewicz revealing privileged information or otherwise acting against defendant's interests. Even if they did, the use of the information or resulting evidence is barred by the privilege itself, not the exclusionary rule. See *Weatherford v. Bursey*, 429 U.S. 545, 552 (1977). But, again, after two hearings, there is no evidence that Tomkiewicz revealed any privileged information to anyone at any time.

¶ 35    Defendant primarily relies on *People v. Knippenberg*, 66 Ill. 2d 276 (1977), where the State obtained an investigator's notes summarizing his interview with the defendant. The investigator worked for the defendant's counsel; the notes were unquestionably privileged. To "exacerbate *** the offensiveness of the violation," the State never informed defendant that it acquired the privileged notes. *Id.* at 286. The court concluded that a defendant suffers "grave and

10

inexcusable" prejudice when his or her attorney discloses privileged attorney-client communications to aid the prosecution. *Id.* at 285. In such circumstances, defendants are denied their rights to effective assistance of counsel and a fair trial. *Id.* (" '[T]he essence of the Sixth Amendment right is *** privacy of communication with counsel.' " (quoting *United States v. Rosner*, 485 F.2d 1213, 1224 (2d Cir. 1973))).

¶ 36    *Knippenberg* is distinguishable. Here, Tomkiewicz never disclosed defendant's privileged communications. Defendant volunteered nonprivileged information and documents to Bryant; Bryant opted to report defendant's statements and evidence to the State without counsel's advice. The State possessed evidence and pursued additional evidence against defendant before Tomkiewicz found out about the investigation. Nothing related to Tomkiewicz's relationship with defendant aided the State's investigation. Also unlike in *Knippenberg*, the State had no duty to disclose Bryant's cooperation to defendant. We find no evidence in this record to support defendant's claims that Tomkiewicz acted as the State's agent or that the State improperly obtained evidence.

¶ 37    To be clear, we are not holding that a lawyer's actions could never trigger the exclusionary rule, but State misconduct is a necessary ingredient. In most cases, it will be the privilege, not the exclusionary rule, that prevents the State's use of improperly disclosed attorney-client discussions. The State properly obtained defendant's recorded statements. Defendant does not allege or suggest that the State entrapped him or failed to obtain proper authority (*i.e.*, the eavesdrop order) to record his incriminating statements. Nothing done in obtaining this recording, by either the State or Tomkiewicz, offends the Constitution, the Rules of Professional Conduct, or common sense. We reverse the trial court's order suppressing defendant's recorded statements.

11

¶ 38                                    CONCLUSION

¶ 39          For the foregoing reasons, we reverse the judgment of the circuit court of Will County

and remand for further proceedings.

¶ 40          Reversed and remanded.

¶ 41          JUSTICE WRIGHT, specially concurring:

¶ 42          I concur in the judgment.