RONALD L. HERBES *et al.*, Plaintiffs-Appellants, v. F.T. "MIKE" GRAHAM *et al.*, Defendants-Appellees.

Second District    No. 2—88—0332

Opinion filed March 16, 1989.

Donald T. Morrison, of Donald T. Morrison & Associates, P.C., and Conzelman, Schultz, Snarski & Mullen, both of Waukegan (Murray R. Conzelman, of counsel), for appellants.

Charles L. Siemon, of Siemon, Larsen & Purdy, of Chicago (Gerald P. Callaghan and Andrew C. Stansell, of counsel), for appellees.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiffs, Ronald and Suzanne Herbes, appeal from trial court orders which disqualified their attorney and dismissed their suit against

defendants, Libertyville Township and the township supervisor. Plaintiffs contend that the trial court (1) erred in regard to their attorney since the requirements for attorney disqualification were not met, and (2) incorrectly held that the Township Open Space Act (Act) (Ill. Rev. Stat. 1985, ch. 139, par. 321 *et seq.*) is constitutional.

In November 1985 voters in Libertyville Township passed referenda authorizing creation of an open-space district and approving the sale of bonds for the purpose of acquiring open land, including acquisition through condemnation or under threat of condemnation, pursuant to the Act. Shortly after the referenda were passed, township officials interviewed attorney Donald Morrison to determine if he would be suitable to represent the township in land acquisition and condemnation proceedings pursuant to its open-space program. After a 1½-hour discussion, Morrison declined to represent the township and left the interview. Approximately one year later, in October 1986, plaintiffs brought this suit for injunctive relief to restrain township officials from exercising powers and disbursing public funds to execute the open-space program on the ground that the Act is unconstitutional. While plaintiffs assertedly sued in their capacity as taxpayers, the complaint reveals that plaintiffs' property had been designated as subject to acquisition as part of the township open-space program. Plaintiffs were represented by Morrison.

Pursuant to a motion by the township, Morrison was disqualified. That matter was the subject of a petition for leave to appeal to both this court and the Illinois Supreme Court, but the petitions were denied in both instances. The suit for injunctive relief continued in the trial court, but plaintiffs' attacks on the constitutionality of the Act were rejected and the matter was dismissed. Plaintiffs appeal from both the disqualification of Morrison and the dismissal of their suit.

The motion to disqualify alleged that Morrison's representation of plaintiffs violated Canons 4 and 9 of the Illinois Code of Professional Responsibility (107 Ill. 2d Rules 4—101 *et seq.*, 9—101 *et seq.*) in that the township had disclosed confidential information regarding its open-space program to Morrison, and plaintiffs were challenging that same program. According to Canon 4: "A lawyer should preserve the confidences and secrets of a client." Canon 9 further cautions: "A lawyer should avoid even the appearance of professional impropriety." The parties do not dispute that the Canons apply only if there was an attorney-client relationship between Morrison and the township.

Plaintiffs claim that there was no attorney-client relationship because the consent of both the attorney and the lay party is necessary to such a relationship, and Morrison denied that he consented. They

point out that no fee agreement was ever reached, no legal advice was given, and no investigation or legal services were performed by Morrison. While plaintiffs acknowledge that an attorney-client relationship may occur during an initial interview, they maintain that such a relationship does not come into being unless confidential information has been disclosed to the lawyer by the client and that disqualification is necessary only to protect such information from further disclosure by the attorney. Plaintiffs assert that the trial court failed to require a showing that confidences had actually passed between the township and Morrison. Although the township produced affidavits asserting that it revealed confidential facts to Morrison, plaintiffs contend that Morrison could not have been made privy to such information since the acquisition program was still essentially in a conceptual stage and there was no confidential information available at the time he was interviewed.

The township responds that the attorney-client relationship can be found without the factors mentioned by plaintiffs and argues that the actual passage of confidences need not be shown. *King v. King* (1977), 52 Ill. App. 3d 749, 367 N.E.2d 1358, the only Illinois case found to be on point, supports the township's position. In *King*, which involved a wife's suit for separate maintenance, the reversal of an award of fees to plaintiff's attorney turned on a finding by the court that an attorney-client relationship had previously existed between the attorney and the defendant-husband and had been concerned with the husband's marital problems. The relationship was found even though the defendant had spoken with the attorney for only half an hour approximately two years earlier and had not retained him or paid him any fees. Defendant gave uncontested testimony that he had gone to the attorney's office to get professional advice about his marital difficulties and that he had revealed information regarding his financial situation and his future plans and actions to the attorney. The court remarked that the matter addressed to the attorney by the husband concerned the same problem which prompted the wife's separate maintenance suit.

Based on these facts the court found that an attorney-client relationship had arisen between defendant and the attorney to the extent that communication between them would be privileged. In support the court cited the following:

> " 'At the inception of the contacts between the layman and the lawyer it is essential that the layman feel free of danger in stating the facts of the case to the lawyer whom he consults. Even though the lawyer rejects the case and the relation of at-

torney and client never arose, the usual duties as to privileged communications and conflicting interests should apply.' " (*King*, 52 Ill. App. 3d at 752, quoting L. Patterson & E. Cheatham, The Profession of Law 246 (1971).)

The court added that if the wife had retained another attorney to represent her in her lawsuit, she would not have been able to call her present attorney as a witness regarding the interview with her spouse because of the attorney-client privilege. The court summarized as follows: "The rule applies even though the attorney acquired no knowledge which could operate to the client's disadvantage. The motives or intentions of the attorney are unimportant. [Citation.] It makes no difference that the client offered no compensation and the attorney neither made nor expected to make any charge for his services." (*King*, 52 Ill. App. 3d at 753.) It is clear from the opinion that the court believed the rule which prohibits an attorney from representing conflicting interests should be applied to protect a lay person who has likely communicated confidences to an attorney, regardless of whether or not a further relationship develops between the two.

■■ *King* is persuasive that an attorney-client relationship also arose in the instant case. The parties do not dispute that Morrison did not provide legal service or advice, that he was not paid a fee, or that the township's acquisition program had not moved much beyond the conceptual stage. However, there is no question that the interview with Morrison was concerned with the possibility of his representing the township in its open-space acquisition program or that the plaintiffs' lawsuit involved that same program. In regard to the details of the interview, however, the various affidavits submitted by the township officers and Morrison reflect conflicting impressions as to whether the issues raised in the present suit were discussed during the interview with Morrison. On the other hand, there is ample testimony that the reason the township attorney recommended Morrison and the township supervisor contacted him was because he had extensive experience and considerable expertise in land acquisition and eminent domain procedures. There is no evidence that the township talked to any other attorneys regarding this matter before it talked to Morrison. Thus, there is strong indication that the township hoped and intended to retain Morrison. It is likely that under these circumstances the township representatives spoke freely with him concerning all aspects of their proposed program and how they hoped to achieve it. On these facts, like those in *King*, it is highly unlikely that if plaintiffs had hired a different attorney to represent them in this suit they would be able to call Morrison to testify regarding his inter-

view with the township. While the decision in *King* was not based expressly on the Code, it certainly was prompted by the principles which underlie Canons 4 and 9 and supports the conclusion that, in the instant case, an attorney-client relationship was sufficiently formed during the township's initial interview with Morrison to justify defendant's invocation of Canons 4 and 9.

■ Defendant relies also on a number of Federal cases which interpret the American Bar Association Code of Professional Responsibility (ABA Code). Plaintiffs correctly point out that, as a general rule, Federal court decisions as to the law of Illinois, other than decisions of the United States Supreme Court, are not binding on Illinois courts. (See *Combs v. Insurance Co. of Illinois* (1986), 146 Ill. App. 3d 957, 962, 497 N.E.2d 503.) However, the committee commentary prepared for the Illinois Code of Professional Responsibility makes it evident that the ABA Code served as a model for the Illinois Code and that the ABA language was retained as much as possible in order to facilitate use of the Code in Illinois. Most notably here, the committee stated, in reference to Federal cases interpreting Canon 4: "These cases suggested the advisability of retaining the ABA language in order that ongoing interpretation of that language may be directly relevant to Illinois courts." (107 Ill. 2d R. 4—101, Committee Commentary, at 629.) Accordingly, defendant's reliance on the Federal cases is appropriate.

■■■ Moreover, defendant's analysis of the Federal cases is accurate. Taken together, the cases teach that an attorney-client relationship need not be explicit or expressed and is not dependent on the amount of time the client spends with the attorney, the payment of fees or execution of a contract, the consent of the attorney, or the actual employment of the attorney. (*Westinghouse Electric Corp. v. Kerr-McGee Corp.* (7th Cir. 1978), 580 F.2d 1311, 1319; *Hughes v. Paine, Webber, Jackson & Curtis, Inc.* (N.D. Ill. 1983), 565 F. Supp. 663, 667 n.10, 669.) Rather, the relationship can come into being during the initial contact between the layperson and the professional and appears to hinge on " 'the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice.' " (*Westinghouse*, 580 F.2d at 1319, quoting McCormick, Evidence §88, at 179 (2d ed. 1972).) Like *King*, the Federal cases focus on the client's viewpoint rather than that of the attorney. If the client consults the attorney for the evident purpose of securing legal advice, an attorney-client relationship will probably be found regardless of the attorney's intent or the fact that a further relationship did not develop as a result of the primary consultation. Thus, the Federal cases

support defendant's contention that an attorney-client relationship existed between itself and Morrison at least to the extent that Canons 4 and 9 are applicable.

Plaintiffs rely on *Committee on Professional Ethics & Grievances v. Johnson* (3d Cir. 1971), 447 F.2d 169, and *Anderson v. Pryor* (W.D. Mo. 1982), 537 F. Supp. 890, to support their position that formation of an attorney-client relationship requires not only the consent of the lay party but also the consent of the attorney. *Committee on Professional Ethics* involved a disbarment matter and was reversed and remanded on grounds of inadequate notice to the respondent attorney of the charges against him. In *dicta,* the court made the bald statement that an attorney-client relationship is one of agency which calls for the consent of both parties. The statement was made in the context of an explanation that the trial court had *not* made a determination as to whether such a relationship existed. The court made no examination or analysis of attorney-client relationships either in general or in regard to the situation before it. The case is not helpful to plaintiffs. The *Anderson* case is not helpful either since the court there expressly based its decision on Missouri law, which we need not follow here.

■■■ Since an attorney-client relationship existed, the Canons apply, and it must be decided whether they require Morrison's disqualification. A motion to disqualify is directed to the sound discretion of the trial court, whose determination will not be disturbed absent a showing of abuse of discretion. (*Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 1053, 452 N.E.2d 804.) Under the Code, where it is shown that the subject matter of a former representation is substantially related to the subject matter of a subsequent adverse representation, the latter representation will be prohibited. (*First National Bank v. St. Charles National Bank* (1987), 152 Ill. App. 3d 923, 931, 504 N.E.2d 1257; *Weglarz v. Bruck* (1984), 128 Ill. App. 3d 1, 5, 470 N.E.2d 21; *Skokie Gold,* 116 Ill. App. 3d at 1056.) Once a substantial relationship is found between the prior and present representations, it is irrebuttably presumed that confidential information was disclosed in the earlier representation. (*Weglarz,* 128 Ill. App. 3d at 6; *Skokie Gold,* 116 Ill. App. 3d at 1056.) The confidences disclosed need not be specifically divulged. *Weglarz,* 128 Ill. App. 3d at 6.

A substantial relationship was found in *La Salle National Bank v. Triumvera Homeowners Association* (1982), 109 Ill. App. 3d 654, 440 N.E.2d 1073, where members of a defendant homeowners' association were advised of their rights as owners *vis-a-vis* a predecessor of the plaintiff by a member of a law firm whose other members represented

the plaintiff in a suit again involving the homeowners' rights. Plaintiff's attorney in *Skokie Gold* had previously represented defendant in efforts to do corporate business under various assumed names. This activity was found to be substantially related to the attorney's subsequent representation of plaintiff in a suit alleging that defendant had violated statutes relating to the use of assumed corporate names. The *Weglarz* court found a substantial relationship where the parties were involved in litigation springing from the dissolution of their joint business interests, and defendant's attorney had previously been involved in the formation of those interests as well as in the joint ownership of stock with both plaintiff and defendant. In *First National Bank*, on the other hand, this court could not find a substantial relationship even though plaintiff's counsel had represented and counselled defendant and her husband on a variety of matters in previous years. However, the court noted that plaintiff's counsel had not represented defendant in any significant manner for the preceding five years, and the earlier representation did not concern the transactions which were the subject matter of the present adverse representation. Moreover, any information which might have been given to plaintiff's attorney by defendant during the earlier representation was outdated or superseded by similar information given to plaintiff by defendant in connection with a later loan application.

■■ In our view the facts of the instant case are far closer to those of *La Salle National Bank, Skokie Gold,* and *Weglarz* than they are to the facts of *First National Bank.* Morrison represented plaintiffs, whose property had been designated as subject to acquisition as part of the township open-space program, in a suit to void the statute which provides authority for the program. It was in connection with the execution of this exact same program that the township previously contacted and consulted with Morrison. Plaintiffs object that there is no evidence that Morrison discussed the constitutional aspects of the Act with the township, whereas the present suit is wholly based on constitutional grounds. This argument places far too narrow a definition on the phrase "subject matter." As we see it, the township open-space program and, in particular, the land acquisition aspects of the program, constituted the subject matter of both representations. Thus, the two subjects were not only substantially related but were essentially the same. Accordingly, we presume that confidential information was disclosed to Morrison and that his disqualification was, therefore, appropriate.

■■ ■ The facts of the instant case are also persuasive that disqualification was proper in light of Federal cases where the courts

have developed a three-prong test to determine whether there is a substantial relationship. The first step involves a factual reconstruction of the prior legal representation. Next, a determination must be made of whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. The third prong requires the court to decide if the confidences given by the former client are relevant to the issues raised in litigation pending against him. If the last two questions are answered in the affirmative, an irrebuttable presumption arises that the client imparted confidences to the attorney (*Hughes v. Paine, Webber, Jackson & Curtis, Inc.* (N.D. Ill. 1983), 565 F. Supp. 663), and disqualification is proper.

Applying the Federal test to the instant case, it is apparent that the prior and subsequent matters were substantially related. The township officials were well aware of Morrison's expertise and clearly hoped to retain him to help with land acquisition and condemnation where necessary. In these circumstances it is reasonable to infer that confidential information regarding the township's proposed program would have been placed before Morrison. More importantly, the subject matter of the township's discussion with Morrison was the very same open-space program which the plaintiffs seek to block. It is compelling that any confidences related during the discussion would be relevant to issues raised by plaintiffs in their suit against the township. Hence, under the Federal cases, disqualification was proper.

Plaintiffs' reliance on *Hannan v. Watt* (1986), 147 Ill. App. 3d 456, 497 N.E.2d 1307, for the proposition that Illinois does not apply an irrebuttable presumption is not warranted. The *Hannan* court decided there was no substantial relationship in that case, and, thus, the question of an irrebuttable presumption never became an issue. Plaintiffs' assertion of the need for an affirmative showing of adverse effect by the movant for disqualification is erroneously based on language in *Hannan* that indicates that the movant needs to show how the prior and pending matters are related. This language goes to the substantial relationship factor and no further.

■■ Plaintiffs also cite a number of Federal cases to support their contention that the presumption that confidences were disclosed is rebuttable. (*La Salle National Bank v. County of Lake* (7th Cir. 1983), 703 F.2d 252; *Freeman v. Chicago Musical Instrument Co.* (7th Cir. 1982), 689 F.2d 715; *Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.* (7th Cir. 1979), 607 F.2d 186.) These cases, however, as well as an Illinois case cited by plaintiffs, *Index Futures Group, Inc. v. Street* (1987), 163 Ill. App. 3d 654, 516 N.E.2d 890, in-

volve, in pertinent part, factual situations where an attorney's current adversary was represented by the attorney's former law firm at a time when the attorney was employed there, but the attorney himself did not work on the client's case. The presumption in those cases, that members of a law firm share their clients' confidences with one another, was determined to be rebuttable. That presumption, however, is not relevant in the present case, where the attorney was actually the one involved in the discussions with the defendant.

■■■ Plaintiffs' final argument is that publication by a township official of allegedly confidential information revealed to Morrison precludes the township's motion to disqualify. Defendant asserts that this issue was not raised in the trial court and should be considered waived. Plaintiffs do not dispute this claim in their reply brief. The only citation plaintiffs make to the record is to certain newspaper articles which were appended to Morrison's affidavit. Plaintiffs do not indicate where the trial court considered this matter or, for that matter, that there was any trial court error in regard to this issue. Absent a showing by plaintiffs that the matter was raised in the trial court, we consider it waived and will not consider it for the first time on review. *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500-01, 475 N.E.2d 872.

Turning now to plaintiffs' contention that the Act is unconstitutional in a number of respects, we note that the Act was amended in July 1988. The amendment amounted to a substantial rewriting of the Act and suggests that the constitutional issues raised by plaintiffs may be moot. However, at oral argument plaintiffs observed that the township's open-space program, including land acquisition through condemnation, has been implemented pursuant to the Act as it stood prior to amendment. This observation is borne out by disputes which have arisen from implementation of the program and have come before this court for resolution. (See *Town of Libertyville v. Bank of Waukegan* (1987), 152 Ill. App. 3d 1066, 504 N.E.2d 1305; *Town of Libertyville v. First National Bank* (1988), 178 Ill. App. 3d 591, 533 N.E.2d 54.) Therefore, we will consider plaintiffs' constitutional issues.

■■■ Legislative enactments are presumed to be constitutional, and all reasonable doubts are to be resolved in favor of upholding challenged legislation. (*North Shore Post No. 21 of the American Legion v. Korzen* (1967), 38 Ill. 2d 231, 233, 230 N.E.2d 833; *Spinelli v. Immanuel Evangelical Lutheran Congregation, Inc.* (1986), 144 Ill. App. 3d 325, 331, 494 N.E.2d 196, 201.) It is this principle which guides our constitutional inquiry.

■■■ Plaintiffs first challenge the referendum question regarding

creation of the open-space program. The form of the question was mandated by statute as follows:

> "Shall the Town of [Libertyville] enter upon an open space program, and shall the Board of Town Trustees have the power to acquire open land by purchase, condemnation or otherwise and the power to issue bonds for open space purposes in any amount not exceeding 5% of the valuation ..... of all taxable property in the township, and to levy a tax to pay the interest and principal on such bonds, all as provided by the 'Township Open Space Act'?" (Ill. Rev. Stat. 1985, ch. 139, par. 323.)

Plaintiffs charge that this question is unconstitutionally vague and ambiguous because it did not adequately inform voters of the subject matter on which they were asked to vote. However, each phrase of the referendum question which has been singled out by plaintiffs was defined in the definition section of the Act, and the referendum question itself indicates that the township could act only pursuant to the Act. Hence, if the voter wished to know more about the referendum question, he could have examined the Act itself.

Plaintiffs object that reading the statute would not have been helpful to a voter since the definitions are not readily understandable. However, plaintiffs support this contention by taking phrases from the statutory definitions out of context and giving them the meaning they wish them to have or suggesting that they are unintelligible to the voter. Read in context, however, it can be seen that the phrases relate to the rest of the definition and are clarified at the same time they help clarify the language around them. Moreover, the definitions employ commonly known words and would not be difficult for the voter to understand. Finally, no referendum question could, or should, need to answer all the questions posed by plaintiffs. All the ballot need do is present the proposition in such a manner that the voter has a clear opportunity to express a choice regarding the question. (*Hoogasian v. Regional Transportation Authority* (1974), 58 Ill. 2d 117, 317 N.E.2d 534.) The question challenged here meets this test. Viewed against the rest of the statute, the referendum question appears able to withstand constitutional examination.

Plaintiffs next charge that the Act, in conjunction with another, completely separate, statutory provision allows the township to sell real property on a whim. This objection is misdirected. Plaintiffs here challenge the Act, but it does not authorize the sale of property on a whim or otherwise. Plaintiffs have not attacked section 4—2(2) of the Township Law of 1874 which does authorize such sales. Ill. Rev. Stat. 1985, ch. 139, par. 38(2).

■ Plaintiffs further argue that the Act does not require the township to establish any necessity for the land it wishes to acquire. This claim appears to have little basis. Section 4.02 of the Act clearly requires that consideration be given to the open space or conservation value of any real property a township acquires:

"In acquiring or accepting land or rights thereto, due consideration shall be given to its open space, outdoor recreation or other conservation values and no real property shall be acquired or accepted which, in the opinion of the board or the State Conservation Department, is of low value from the standpoint of its proposed use." (Ill. Rev. Stat. 1985, ch. 139, par. 324.02.)

Moreover, the argument ignores the reality of eminent domain law which allows a challenge to condemnation proceedings on grounds that the taking is not necessary. See *Lake County Forest Preserve District v. First National Bank* (1987), 154 Ill. App. 3d 45, 506 N.E.2d 424.

■ Plaintiffs argue at length that the Act is unconstitutional because it permits a township to acquire what it calls "development rights" under the section of the statute which allows acquisition of less than a fee interest in real property. They claim that by attempting to acquire "development rights" the township is attempting to zone. Nowhere, however, do plaintiffs explain what "development rights" are, how they would effect a zoning result, or even where the phrase comes from. Apparently, plaintiffs are making an argument that the Act would be unconstitutional in its application if it were used to acquire "development rights." This argument is entirely too speculative and vague to warrant further consideration.

To summarize, we do not find any of the challenges set forth by plaintiffs sufficient to hold the Act unconstitutional on its face. All reasonable doubts regarding the constitutionality of a statute are to be resolved in favor of the legislation. (*North Shore Post No. 21*, 38 Ill. 2d at 233; *Spinelli*, 144 Ill. App. 3d at 331.) It should be noted that the court has only addressed constitutional issues raised by the pleadings. It would be incorrect to conclude that this opinion has made an exhaustive review of the constitutionality of the entire Act. Accordingly, the orders of the circuit court of Lake County disqualifying plaintiffs' attorney and dismissing plaintiffs' suit are affirmed.

Affirmed.

DUNN and WOODWARD, JJ., concur.