2016 IL App (1st) 141315

Nos. 1-14-1315, 1-14-2730 & 1-14-2993 (consolidated)

FIFTH DIVISION
March 11, 2016

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| RUBIN AND NORRIS, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant and Cross-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 L 3903 |
| | ) | |
| STEPHEN PANZARELLA, | ) | Honorable |
| | ) | Margaret A. Brennan, |
| Defendant-Appellee and Cross-Appellant. | ) | Judge Presiding. |

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice Gordon concurred in the judgment and opinion.

**O P I N I O N**

¶ 1     This consolidated appeal involves a dispute over whether the plaintiff law firm represented the defendant and was entitled to compensation for legal services. Plaintiff, the law firm of Rubin and Norris, LLC (Rubin), challenges the trial court's dismissal of its claims against defendant Stephen Panzarella, alleging a breach of a contingent fee agreement and, alternatively, a claim based on *quantum meruit* for Rubin's alleged representation of Panzarella concerning a village's proposed special assessment on certain property. Specifically, the trial court held that Rubin failed to plead sufficient facts to demonstrate the existence of a written contingency fee agreement signed by Panzarella and an attorney-client relationship.

¶ 2    Defendant Panzarella challenges the trial court's denial of his motion for sanctions, which alleged Rubin filed its claims without a legal foundation and factual basis. Specifically, the trial court found that Rubin presented an objectively reasonable argument for its position that it represented Panzarella in a tax dispute and was owed compensation for its services.

¶ 3    For the reasons that follow, we affirm the trial court's dismissal of Rubin's contract claim, reverse the dismissal of Rubin's *quantum meruit* claim, and affirm the denial of Panzarella's motion for sanctions. We hold that (1) Rubin has forfeited review of the trial court's dismissal of its breach of contract claim; (2) the trial court erred by finding Rubin failed to plead sufficient facts to demonstrate an attorney-client relationship and dismissing Rubin's claim for damages pursuant to a theory of *quantum meruit*; and (3) the trial court did not err by ruling that Rubin had an objectively reasonable argument to claim it was owed fees for representing Panzarella in a tax dispute and denying Panzarella's motion for sanctions.

¶ 4                          I.   BACKGROUND

¶ 5    In April 2013, the Rubin firm filed a two count complaint seeking a judgment against Panzarella for at least $157,464.38, plus interest and costs, and alleging: (count I) that he breached a contingent fee agreement for work performed on a proposed special assessment by the Village of Bensenville; and (count II) that, in the alternative, the firm was entitled to be paid on a *quantum meruit* basis for the work it had performed for Panzarella. Rubin's complaint alleged it previously had represented Panzarella concerning his various Chicagoland area properties, and they had agreed, after several telephone calls and e-mails, that Rubin would represent Panzarella in challenging a proposed special assessment against his Bensenville property. Rubin further alleged the e-mails established the parties' agreement that Rubin would receive as its fee one third of the reduction in the amount of the proposed Bensenville assessment. Rubin attached several e-mails to

its complaint.

¶ 6    In a February 13, 2007 e-mail, sent from Panzarella to attorney Donald Rubin at about 8 a.m., Panzarella referenced their telephone conversation from the previous day and stated that he was "in agreement with the 36 months, no interest and [Rubin's] representation but not in agreement at 40%." Panzarella stated that his records "over the years" indicated that "it has always been 33 1/3%." He asked Donald Rubin to "[p]lease advise if you will amend the fees to 33 1/3% and forward me a written agreement for signature."

¶ 7    The same day, Donald Rubin sent Panzarella an e-mail stating:

"We will agree to represent you for 33.33%, but you must be aware that there may be other costs, particularly if we go to trial. Where we can share these costs between other participating clients we will do so, but, ultimately, each client has to demonstrate how much value, if any, this infrastructure work adds or detracts from their own property. Clearly, as is the case with our other representation, we will only continue with the litigation if we believe there is a substantial likelihood of success. And remember, we only get paid a percentage of what we save you, so this is a suicide mission for us. We either succeed or go down in flames. I think this arrangement is fair, but if you still have doubts, I would prefer not to go forward. However, bear in mind that if the assessment roll is confirmed against your property, you will be saddled with about a $900,000 payoff over 20 years, or about $45,000 per year."

¶ 8    The same day, Donald Rubin sent Panzarella an e-mail stating:

"Let me review this fee structure with you. If we can negotiate a settlement without the need for a trial, the fee will be 33%, plus appraisal fees and other costs,

if needed and of course with your consent. If we have to go to trial, this would be with a jury and expert witnesses on both sides. As a result our fee must increase to be commensurate with the immense amount of work that we will need to do in preparation for trial.

I will be preparing an engagement letter in accordance with this letter. Please contact me with any questions."

¶ 9    The same day, Donald Rubin sent to Panzarella the following e-mail:

"The costs are borne by the plaintiff. However, our fee is 1/3rd regardless of whether this goes to trial or not. The extra costs would be an appraisal report, expert witness fees, filing fees and court reporters, probably around $7-8,000, absent unforeseen circumstances. If we can get your levy down by $100,000, the fee would be $33,000 and the other costs around $7-8,000. Therefore you would still be way ahead. Think about it and let me know."

¶ 10    On March 4, 2007, Panzarella sent Donald Rubin the following e-mail:

"When speaking with you on the representation of my property before Judge Duncan I viewed this as a protest on the tax bill rate objection which your company normally files for me on my properties.

I have been inundated with calls from law firms in Wheaton and neighboring towns and other friends to find this is not the norm.

We agreed to cap the legal fees should this wind up in court and I am fine with that but the 33 1/3 is excessive on this type of case and should not fall under this type of representation.

I feel like the horses [*sic*] ass in thinking I negotiated a good deal. The offers and the advice from the attorneys who contacted me and who filed appearances on Feb. 16, 2007, in order to prevent default are no where near 33 1/3% in representing my neighbors in the Industrial Park.

Please advise me if you will accept the rate of 20% for your services vs. the 33 1/3%."

¶ 11    On March 5, 2007, at about 10:36 a.m., Panzarella sent Donald Rubin the following e-mail:

"As long as you are willing to discuss your fees based on the amount of work, I am ok with that because this might turn out to be a paper shuffle with so many firms representing the respective land owners in the park. Don believe me when I tell you I have been called one after the other regarding representation but said I was being represented.

That is when the fee subject was brought to my attention."

¶ 12    At about 11:18 a.m. the same day, Donald Rubin sent the following e-mail to Panzarella:

"I don't know who has been calling you or what experience they have in this type of matter. When we went to the hearing we were the only firm that had already filed both its appearance and objection (answer) on behalf of all of our clients. Everybody else had done nothing and could have been defaulted out of the case right then and there. I was also one of two attorneys out of 20 firms present at the hearing who were quoted by the local paper. I have attached a copy for your review. The Village is looking for a $46 million special assessment. My fee is based upon a % of the principal savings. If I save you $50,000, my fee is $16,667. However, if you have to pay the $50,000 over the 20-year amortization period, at

- 5 -

8%, you would be paying almost 3 times that amount. I have always dealt fairly

with you and will continue to do so. If I feel that I have not earned the fee at the end

of this process, we can talk then. I neither overcharge or cheat my clients. And,

don't forget, if I hadn't contacted you about this, you may have been one of those

who was defaulted."

¶ 13    Rubin alleged in its complaint that, pursuant to Panzarella's request, it sent him a representation letter to sign and return. Meanwhile, Rubin proceeded to work on the proposed Bensenville assessment due to its prior relationship with Panzarella. Specifically, Rubin filed its appearance and other pleadings in the case on behalf of Panzarella and advised him of the progress of his suit, which he participated in by reviewing and signing in September 2007 discovery responses that Rubin had prepared. Rubin alleged it did not realize that Panzarella had not signed and returned the representation letter and continued to work on the matter for more than three years until the Village of Bensenville withdrew its proposed special assessment and the court dismissed the special assessment case. Rubin alleged it had reached a successful completion of the case and sent invoices to Panzarella for $157,464.38, but he refused to pay.

¶ 14    Panzarella moved to dismiss the complaint pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2012)). Concerning the breach of contract claim, Panzarella moved to strike the e-mails attached to the complaint and dismiss the claim with prejudice because the e-mails neither constituted a written contract nor a contingent fee contract. Concerning the *quantum meruit* claim, Panzarella argued that the necessary attorney-client relationship did not exist because there was no allegation that Panzarella had consented to the creation of such a relationship concerning the proposed Bensenville special assessment.

¶ 15    In response, Rubin argued the e-mails attached to the complaint demonstrated that the parties had reached an agreement on a contingent fee contract in the Bensenville matter. Rubin also argued that Panzarella's notarized signature on the September 2007 answers to interrogatories and document request response—which were prepared by Rubin, stated that Rubin was the attorney for Panzarella, the objector, and were filed in court in the Bensenville special assessment case—constituted further proof of both the parties' contingent fee agreement and attorney-client relationship.

¶ 16    In his reply, Panzarella argued that the absence of any signed contingent fee agreement required dismissal of Rubin's complaint with prejudice. Panzarella also submitted an affidavit attesting to his discussions with Rubin about the Bensenville special assessment and the circumstances surrounding his signature on the September 2007 discovery responses. Specifically, Panzarella asserted that although he had retained Rubin before February 2007 to represent him on a separate matter involving his individual tax appeals for his property, he never reached an agreement with Rubin to represent him on the Bensenville special assessment. Panzarella asserted he told Rubin that he would not retain the firm at a 1/3 contingency fee in the Bensenville matter. Moreover, Panzarella always had a written agreement with Rubin on each prior tax appeal the firm had performed; never received any contingency fee agreement from Rubin despite his February 13, 2007 request for a written agreement; and did not sign any contract sent by Rubin concerning the Bensenville special assessment because he did not agree to be represented by Rubin in that case. Furthermore, Panzarella averred that when he signed the September 2007 discovery responses, he thought those documents were for other matters on which he had retained Rubin, so he signed and returned the discovery responses to Rubin without understanding the pertinence of those documents because he had always relied on and trusted his attorneys. In addition, the

discovery responses were not notarized in Panzarella's presence. Panzarella averred he did not know Rubin thought it was representing him in the Bensenville special assessment challenge until he received Rubin's bill for $157,000. Panzarella averred that while Rubin claimed that it had achieved a successful result concerning the special assessment, the Village of Bensenville ultimately raised the taxes even higher than before. In 2011, Panzarella terminated Rubin's representation on all of his legal matters.

¶ 17    The trial court dismissed with prejudice Rubin's breach of contingency fee agreement claim, finding that the e-mails were insufficient to form a contract and the specific requirements for a contingent fee contract had not been met. The court also dismissed Rubin's *quantum meruit* claim, finding the allegations insufficient concerning the existence of an attorney-client relationship, but allowed Rubin the opportunity to replead that claim.

¶ 18    In November 2013, Rubin filed an amended complaint alleging only a *quantum meruit* claim against Panzarella based on his denial of the contingent fee agreement and the trial court's agreement with him. Rubin stated that it was prepared to present evidence at the appropriate hearing regarding the time spent on the special assessment case and the value of its services to Panzarella. The amended complaint included all of the common facts alleged in its original complaint and the same exhibits. In addition, Rubin added that the special assessment, if approved, would have imposed a cost of $888,208.31 on Panzarella's properties. Rubin also stated that even though Panzarella would have owed Rubin $296,039.83 under the contingent fee agreement (one-third of $888,208.13), Rubin had reduced its fee to 17.7% of the proposed special assessment because the Village of Bensenville and property owners ultimately approved a special service area assessment. The additional exhibits attached to the amended complaint included a copy of the unsigned engagement letter from Rubin to Panzarella; the September 2007 discovery responses

signed by Panzarella; copies of two case status update letters sent from Donald Rubin to Panzarella in April 2009 and July 2010; and a February 13, 2007 e-mail sent from Panzarella to Donald Rubin at 3:26 p.m., which stated:

> "I have just gone through a major law case and still have two outstanding. I am shell shocked over the expenses the last three years and on going cost in legal fees have amounted to.
>
> What can a trial like this cost me?
>
> The Village and I are in a case right now and it is going on for better then [*sic*] a year. The village can drag this on and will.
>
> Shared expense of the other six clients is reasonable. What do you project the the [*sic*] prorated cost could be on something like this? If it goes to trial and you win is the trial cost taken from your 33% or added to the 33%
>
> It is not a suicide mission, if I am paying for the time and trial cost and other cost. I could lose at both ends. That is why I believed you were to get 33.33% for the total representation to fight this. I am not comfortable with an open end agreement. I don't think my company or I can sustain another law suit."

¶ 19    Panzarella moved to dismiss the amended complaint pursuant to sections 2-615 and 2-619 of the Code. He argued the pleading failed to allege a *quantum meruit* claim because it failed to sufficiently allege: the details of the services Rubin supposedly provided; a meeting of the minds to create a contract for legal services; the basic elements of any agreement between the parties; and the elements of a *quantum meruit* claim. Panzarella argued the amended complaint should be dismissed for Rubin's egregious conduct in demanding a contingent fee in the absence of any agreement and for requesting an exorbitant fee. He also argued that even if the court concluded that

the February 13, 2007 e-mails could be construed to suggest a conditional acceptance of terms, Rubin's April 2013 complaint was time barred because it was filed beyond the applicable five-year statute of limitations. Specifically, Panzarella argued that the March 2007 e-mails demonstrated that Panzarella had rejected Rubin's representation and Rubin failed to file its complaint within five years of March 2007. As an exhibit to his motion to dismiss, Panzarella resubmitted his affidavit that had supported his prior motion to dismiss.

¶ 20    In response, Rubin argued that it was not obligated to file with the complaint a detailed statement of the services rendered in the special assessment matter; Panzarella's statements in the signed September 2007 discovery admitted that Rubin was his attorney and constituted judicial admissions, and the admissions, e-mails, letters and pleadings attached to the amended complaint clearly demonstrated that Panzarella had retained Rubin. Furthermore, Rubin's claim was timely because the statute of limitations had not begun to run until Rubin's services were performed and concluded in 2010, when the special assessment case was dismissed. In support of its response, Rubin attached an affidavit by John Norris but signed by Donald Rubin. The affiant averred that he was the attorney primarily responsible for the work performed in the Bensenville special assessment case, Panzarella retained Rubin to represent him in that matter, Rubin provided the necessary legal work that resulted in the Village of Bensenville withdrawing the special assessment, and Rubin expended approximately 425 hours for legal services from 2007 until 2010 on the matter.

¶ 21    The trial court dismissed the amended complaint with prejudice, finding Rubin's pleading failed to establish either "a meeting of the minds" where there was no fee agreement or an attorney-client relationship. The court stated that the most important e-mails in its analysis were (1) the March 4, 2007 e-mail, in which Panzarella discussed the need to negotiate a different rate

because he was approached by other law firms that offered a lower fee; (2) the 10:36 a.m. March 5, 2007 e-mail, in which Panzarella told other law firms he was already being represented in this matter; and (3) the 11:18 a.m. March 5, 2007 email, which indicated Rubin and Panzarella were still negotiating a rate. The trial court also stated that Panzarella may have told the other law firms he already had an attorney in order to protect himself and his signature on the discovery responses did not constitute a judicial admission for purposes of establishing an attorney-client relationship.

¶ 22    Rubin moved the court to reconsider the dismissal of the amended complaint or, alternatively, for leave to file a second amended complaint. Rubin argued that it did not need to plead or establish an attorney-client relationship to recover under a *quantum meruit* theory. In its proposed three-count second amended complaint, Rubin alleged (count I) breach of a contingent fee agreement; (count II) a *quantum meruit* claim; and (count III) an unjust enrichment claim, which sought a judgment of at least $160,000 and alleged that Panzarella knew of, consented to, and received substantial value from the legal services Rubin rendered in the special assessment litigation.

¶ 23    The trial court denied the motion for reconsideration, finding there was not sufficient evidence to find an attorney-client relationship existed where the attorney claimed such a relationship existed but defendant denied it. The court also denied Rubin leave to file a second amended complaint because there was no attorney-client relationship. Rubin appealed.

¶ 24    Meanwhile, Panzarella moved for sanctions against Rubin pursuant to Illinois Supreme Court Rule 137 (eff. July 1, 2013), arguing that Rubin's complaint and amended complaint were filed without a legal foundation or factual basis. The trial court denied Panzarella's motion for sanctions, and Panzarella appealed. Panzarella's appeal has been consolidated with Rubin's earlier appeal of the trial court's dismissal of its pleadings.

¶ 25                                II.   ANALYSIS

¶ 26     Illinois is a fact-pleading jurisdiction; although the plaintiff is not required to set forth evidence in the complaint, the plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action, not simply conclusions. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429-30 (2006). In reviewing the dismissal of a complaint, the court must take all well-pled facts as true and draw all reasonable inferences from those facts that are favorable to the pleader. *Canel & Hale, Ltd. v. Tobin*, 304 Ill. App. 3d 906, 912 (1999). Exhibits attached to a pleading constitute part of the pleading and are considered with the complaint in its entirety for determining whether the pleading sets forth sufficient facts to state a cause of action. *Payne v. Mill Race Inn*, 152 Ill. App. 3d 269, 274-75 (1987). Dismissal of a cause of action on the pleadings is proper only where it is clearly apparent that no set of facts can be proven entitling the plaintiff to recover. *Illinois Graphics Co. v. Nickum,* 159 Ill. 2d 469, 483 (1994). A motion to dismiss under section 2-615(a) of the Code (735 ILCS 5/2-615(a) (West 2012)) tests the legal sufficiency of a plaintiff's claim; a motion to dismiss under section 2-619(a) (735 ILCS 5/2-619(a) (West 2012)) admits the legal sufficiency of the plaintiff's claim, but asserts certain defects or defenses outside the pleading that defeat the claim. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 578-79 (2006). Under either section, our standard of review is *de novo*. *Id*. at 579.

¶ 27                      A.   Abandonment of the Breach of Contract Claim

¶ 28     Rubin argues the trial court erred in dismissing the breach of contract claim because the exhibits attached to the complaint, taken together with the allegations of the complaint, established a valid and enforceable contingency fee agreement. Panzarella argues Rubin has forfeited this challenge to the dismissal of its breach of contract claim in its original complaint by filing an amended complaint that asserted only a *quantum meruit* claim and did not refer to or adopt the

prior pleading. The only reference in the amended complaint to the previously dismissed breach of contract count was Rubin's statement in the final paragraph of its amended complaint that "[b]ecause Panzarella had decided to deny the contingent fee agreement and the Court has agreed with Defendant, Plaintiff asks that it be awarded fees based upon *quantum meruit*."

¶ 29    Whether a dismissed claim had been preserved for review is a question of law, and our review is *de novo*. *People v. Gutierrez*, 2012 IL 111590, ¶ 16. Our supreme court "has clearly and consistently explained that 'a party who files an amended pleading waives any objection to the trial court's ruling on the former complaints,' and ' "[w]here an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn." ' " *Bonhomme v. St. James*, 2012 IL 112393, ¶ 17 (quoting *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 153-54 (1983), quoting *Bowman v. County of Lake*, 29 Ill. 2d 268, 272 (1963)).

¶ 30    A plaintiff may avoid forfeiture and preserve a challenge to an order dismissing with prejudice fewer than all of the counts in his complaint by three methods. *Gaylor v. Campion, Curran, Rausch, Gummerson & Dunlop, P.C.*, 2012 IL App (2d) 110718, ¶ 36. First, the plaintiff may stand on the dismissed counts, take a voluntary dismissal of the remaining counts, and argue the matter on appeal. *Id*. Second, the plaintiff may file an amended pleading that realleges, incorporates by reference, or refers to the dismissed counts. *Id*. "A simple paragraph or footnote in the amended pleadings notifying defendants and the court that plaintiff [is] preserving the dismissed portions of [the] former complaints for appeal [is] sufficient to avoid the consequences of the *Foxcroft* [forfeiture] rule. " *Tabora v. Gottlieb Memorial Hospital*, 279 Ill. App. 3d 108, 114 (1996). Third, the plaintiff may perfect an appeal from the dismissal order prior to filing an amended pleading that does not refer to or adopt the dismissed counts. *Gaylor*, 2012 IL App (2d)

110718, ¶ 36.

¶ 31    Significant policy considerations, particularly the interest in the efficient and orderly administration of justice, favor adherence to the forfeiture rule. *Foxcroft Townhome Owners Ass'n*, 96 Ill. 2d at 154. Because the complaint notifies the defendant of the alleged causes of action and theories of recovery, the defendant can expect that no reference in an amended complaint to allegations made in an earlier complaint means that those allegations are no longer at issue. *Id.* "[P]ermitting a plaintiff to 'proceed to trial on different issues contained in separate complaints' would certainly disadvantage defendants whereas there is 'no undue burden in requiring a party to incorporate in its final pleading all allegations which it desires to preserve for trial or review.' " *Bonhomme*, 2012 IL 112393, ¶ 28 (quoting *Foxcroft Townhome Owners Ass'n*, 96 Ill. 2d at 154).

¶ 32    Rubin's own pleadings in this case illustrate the confusion that can result when *Foxcroft* is ignored. In its motion to reconsider the trial court's order dismissing the amended complaint that alleged only a *quantum meruit* claim, Rubin stated that it also disagreed with the trial court's dismissal of Rubin's breach of contract claim from the original complaint and sought leave to file a three-count second amended complaint alleging breach of contract, *quantum meruit* in the alternative, and unjust enrichment. In denying Rubin's motion to reconsider, the trial court remarked that Rubin had "kind of bootstrapped to get around [the court's] prior ruling." In both of its notices of appeal, which are filed in the trial court, Rubin indicated that it would be appealing, *inter alia*, the trial court's dismissal of the breach of contract claim of the original complaint and the *quantum meruit* claim of the amended complaint.

¶ 33    Rubin's amended complaint did not reallege or incorporate by reference the breach of contract claim that was dismissed from its original complaint; instead, Rubin indicated to

defendant and the trial court that it intended to pursue only a *quantum meruit* claim because "Panzarella has decided to deny the contingent fee agreement and the Court has agreed with Defendant." See *id*. ¶ 29 (where there is no objective indication in the amended complaint that the plaintiff intended to pursue a dismissed claim, the trial court and defendant should not be put in a position to hazard a guess as to which counts the plaintiff intended to pursue). Had Rubin intended to abandon the breach of contract claim that was dismissed with prejudice from the original complaint, the record in this case might very well look exactly the same. Rubin's amended complaint pleaded only a claim for relief based on *quantum meruit*. That complaint was complete in itself and did not refer to or adopt the previously dismissed prior pleading. As a result, Rubin has in effect abandoned and withdrawn the breach of contract claim, and our consideration of the trial court's dismissal of that claim is eliminated from this appeal.

¶ 34                                    B.   *Quantum Meruit*

¶ 35    Rubin argues the trial court erred in dismissing the *quantum meruit* claim by concluding that the parties never formed an attorney-client relationship where they did not sign a contingency fee agreement or agree on a fee. The source of the error, according to Rubin, was the trial court's failure to construe in Rubin's favor its allegations about Panzarella's statements in his e-mails and his actions during the pendency of the litigation. Rubin asserts that it met its pleading burden on the attorney-client relationship issue and Panzarella, at most, merely raised a factual dispute, which the trial court inappropriately resolved in Panzarella's favor in the context of a motion to dismiss. We agree that it was error for the trial court to dismiss Rubin's amended complaint and terminate the litigation.

¶ 36    To state a claim for *quantum meruit*, a plaintiff must present facts showing that (1) the plaintiff performed a service to benefit the defendant; (2) the plaintiff performed that service

nongratuitously; (3) defendant accepted the service; and (4) no contract existed to prescribe payment of the service. *Owen Wagener & Co. v. U.S. Bank*, 297 Ill. App. 3d 1045 (1998). An attorney who renders professional services has a right to be compensated for such services. *Greenbaum & Browne, Ltd. v. Braun*, 88 Ill. App. 3d 210, 213 (1980). When the parties have not entered into an express contract, the court will generally find an implied promise to pay reasonable compensation for services rendered by the attorney to the person sought to be charged under the theory of *quantum meruit*. *Id*. The failure to agree on the details of compensation for services rendered by an attorney and accepted by a client does not preclude *quantum meruit* recovery. *Lee v. Ingalls Memorial Hospital*, 232 Ill. App. 3d 475, 478 (1992); *Dorocke v. Farrington*, 43 Ill. App. 2d 394, 399 (1963).

¶ 37    "The right to attorney fees based on *quantum meruit* does not exist unless there is an underlying attorney-client relationship where the client expressly or impliedly agrees to pay fees." *In re Chicago Flood Litigation*, 289 Ill. App. 3d 937, 945 (1997); see also *Wildman, Harrold, Allen & Dixon v. Gaylord*, 317 Ill. App. 3d 590, 598 (2000) (in an action for attorney fees, whether based on contract or *quantum meruit*, the plaintiff-attorney's *prima facie* case includes proof of the existence of an attorney-client relationship). "The attorney-client relationship is a voluntary, contractual relationship that requires the consent of both the attorney and client. [Citations.] The relationship cannot be created by an attorney alone and generally the duty falls upon a potential client to initiate contact with the attorney." *In re Chicago Flood Litigation*, 289 Ill. App. 3d at 941.

¶ 38    A formal or written agreement is not a prerequisite to the formation of an attorney-client relationship. *Herbes v. Graham*, 180 Ill. App. 3d 692, 699 (1989). Rather, the relationship can be created during the initial contact between the layperson and the lawyer. *Id*. Its formation hinges upon the putative client's manifested intention to seek professional legal advice and his reasonable

belief that he is consulting a lawyer in that capacity. *Id.* (quoting *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir. 1978)). Illinois courts do not require the putative client to show that he actually submitted confidential information to the lawyer. See *King v. King*, 52 Ill. App. 3d 749, 753 (1977); *Herbes*, 180 Ill. App. 3d at 698. Moreover, the analysis focuses on the client's viewpoint rather than that of the attorney. *Herbes*, 180 Ill. App. 3d at 699. The payment of fees and the fact that a further relationship did not develop as a result of the preliminary consultation are not relevant considerations. *King*, 52 Ill. App. 3d at 753; *Herbes*, 180 Ill. App. 3d at 699. The rationale for this policy is the concern that " '[a]t the inception of the contacts between the layman and the lawyer it is essential that the layman feel free of danger in stating the facts of the case to the lawyer whom he consults.' " *King*, 52 Ill. App. 3d at 752 (quoting L. Ray Patterson & Elliot E. Cheatham, The Profession of Law 246 (1971)).

¶ 39    Rubin alleged that Panzarella, through his e-mail correspondence and his actions during the pendency of the special assessment litigation, impliedly promised to pay a reasonable rate for Rubin's services in objecting to the Village of Bensenville's imposition of a special assessment on two of Panzarella's properties despite the absence of a signed contingent fee agreement. Specifically, in the 8 a.m., February 13, 2007 e-mail from Panzarella, he stated that he was in agreement with "your [Rubin's] representation, but not in agreement at 40%." Furthermore, in the 10:36 a.m., March 5, 2007 e-mail from Panzarella, he stated that as long as Rubin was willing to discuss its fees based on the amount of work, Panzarella was "ok with that because [the litigation] might turn out to be a paper shuffle with so many firms representing the respective land owners in the park." Panzarella added that many other lawyers had contacted him but he assured Rubin that he told the other lawyers he already "was being represented."

¶ 40    Rubin also alleged Panzarella acted in conformity with his implied promise to pay a reasonable rate for Rubin's representation by never objecting over the three years of the special assessment litigation to Rubin pursuing the case on his behalf and by signing and returning the discovery responses that were prepared by Rubin and filed in the litigation. Those discovery responses stated that Rubin was Panzarella's attorney in the special assessment litigation. In addition, Panzarella remained silent after receiving case status update letters from Rubin in April 2009 and July 2010. The April 2009 letter informed Panzarella that Rubin was reviewing the legality of the Village of Bensenville's capital recovery surcharge and would advise him of Rubin's recommended course of action. Rubin also informed him that he would be billed shortly for his individual percentage of the costs Rubin had advanced on behalf of all its clients. The July 2010 letter informed Panzarella that the Village of Bensenville intended to abandon the special assessment project and instead provide certain improvements through a different funding mechanism. Rubin stated, "As your counsel, we will be furnished with maps detailing the properties the Village intends to include in the designated areas." Rubin informed Panzarella of the Village's proposal to settle the special assessment dispute with the objectors and would advise him of the details of the Village's plans when the information became available.

¶ 41    We find these allegations sufficient to show an underlying attorney-client relationship between Rubin and Panzarella and that Panzarella accepted the nongratuitous service Rubin performed to benefit Panzarella. Panzarella's assertion that he erroneously thought the discovery documents he signed, which stated that Rubin was his attorney, related to another matter in which he had retained Rubin merely raised a factual dispute that the trial court should not have resolved in the context of a motion to dismiss. Furthermore, the trial court failed to take as true and draw all reasonable inferences in favor of Rubin from the well-pled fact that Panzarella told other attorneys

- 18 -

seeking his business that he was already represented by counsel in the special assessment matter.

¶ 42    Panzarella also argues dismissal of Rubin's *quantum meruit* claim was proper because Rubin failed to sufficiently allege the services for which it was seeking legal fees. Panzarella criticizes Rubin's allegations concerning the alleged services it provided to justify $157,464.83 in fees as amounting to little more than general allegations regarding having provided representation for three years, the filing of an appearance and answer, the preparation of answers to some routine discovery propounded by the Village of Bensenville, the drafting of two update letters, and the statement that Rubin was prepared to present evidence at an appropriate hearing regarding the time spent on the special assessment and the value of its services to Panzarella. Furthermore, Panzarella argues Rubin's affidavit listing the legal services performed was improper under Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013) because it was signed by someone (Donald Rubin) other than the stated affiant (John Norris). In addition, the affidavit does not clearly state that the services were performed solely for Panzarella, as opposed to all the property owners represented by Rubin in the special assessment proceeding.

¶ 43    While Rubin's complaint is not a model of the factual detail and accuracy that should be included in a *quantum meruit* claim, it is not so lacking in relevant factual allegations concerning the nongratuitous services Rubin provided to Panzarella as to merit dismissal. The granting of a motion to dismiss for failure to state a cause of action should be affirmed on appeal only when no set of facts can be proved under the pleadings which will entitle plaintiff to relief. *Illinois Graphics Co.*, 159 Ill. 2d at 483. Rubin alleged that the services it provided to Panzarella included keeping him advised of the progress of the lawsuit, preparing and filing discovery responses, and sending him case update letters. In addition, Rubin alleged that Panzarella's acceptance of its services resulted in $888,203.312 of tax savings to Panzarella. Viewing the allegations in the light most

favorable to Rubin, we find the allegations, if proved, would adequately show the necessary *quantum meruit* claim elements of nongratuitous services performed by Rubin to benefit Panzarella, who accepted those services.

¶ 44       Panzarella also argues that dismissal of Rubin's *quantum meruit* claim was proper because it is time barred. Panzarella asserts the claim, which was filed on April 17, 2013, is time barred because Rubin failed to file it within the five-year statute of limitations, which began to run in March 2007. According to Panzarella, the March 2007 e-mails between the parties demonstrate that any attorney-client relationship no longer existed because they were still negotiating over the fees, and Rubin failed to file its *quantum meruit* claim within five years of March 2007. We disagree.

¶ 45       Recovery predicated on a *quantum meruit* theory is a claim "on a contract implied by law." *Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.*, 87 Ill. App. 3d 480, 486 (1980). Pursuant to section 13-205 of the Code (735 ILCS 5/13-205 (West 2012)), such claims are to be filed within five years next after the cause of action accrued, with accrual having been interpreted as being the date the services have been completed (*Schmidt v. Desser*, 81 Ill. App. 3d 940 (1980)). Liberally construing the allegations in the amended complaint in Rubin's favor, the alleged facts show that Rubin and Panzarella's alleged attorney-client relationship did not end in March 2007 but rather continued until at least September 2010, when the special assessment litigation was dismissed.

¶ 46       We conclude that the trial court improperly dismissed Rubin's *quantum meruit* claim and the cause must be remanded for further proceedings. Accordingly, we also reverse the trial court's order denying Rubin leave to file an amended complaint but only as to the *quantum meruit* and unjust enrichment claims. Although Rubin does not have an absolute and unlimited right to amend

its pleadings, the record indicates that Rubin can cure its defective pleading, Panzarella would not

sustain prejudice or surprise by an amendment, the amendment would be timely, and Rubin has

had just one opportunity to amend its *quantum meruit* claim and no opportunities to amend its

unjust enrichment claim. See *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1,

6-7 (2004).

¶ 47                    C.   Illinois Supreme Court Rule 137 Sanctions

¶ 48    Panzarella argues the trial court abused its discretion by denying his motion for sanctions

because Rubin's initial and amended complaints were filed without a legal or factual basis. As

sanctions, Panzarella sought to recover attorney fees of $15,593.82 or an amount commensurate

with his arguments.

¶ 49    Illinois Supreme Court Rule 137 (eff. July 1, 2013) provides that circuit court judges may

impose sanctions when the rule is violated; they are not required to do so. The rule is designed to

discourage frivolous filings, not to punish parties for making losing arguments. *Lake

Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 15. The purpose of the rule is to prevent parties

from abusing the judicial process by imposing sanctions on those who file vexatious and harassing

actions premised on unsupported allegations of fact or law. *Dismuke v. Rand Cook Auto Sales,

Inc.*, 378 Ill. App. 3d 214, 217 (2007). Rule 137 is penal in nature and is strictly construed,

reserving sanctions for the most egregious cases. *Patton v. Lee*, 406 Ill. App. 3d 195, 202 (2010).

The petitioner for sanctions bears the burden of proof. *Technology Innovation Center, Inc. v.

Advanced Multiuser Technologies Corp.*, 315 Ill. App. 3d 238, 243 (2000). On review, we ask

whether the trial court's decision was informed, based on valid reasons, and followed logically

from the circumstances of the case. *Dismuke*, 378 Ill. App. 3d at 217. We review a trial court's

ruling on a motion for Rule 137 sanctions for an abuse of discretion (*CitiMortgage, Inc. v.

*Johnson*, 2013 IL App (2d) 120719, ¶ 19), and there is no requirement for a circuit court to explain its reasons for denying a motion for sanctions (*Lake Environmental, Inc.*, 2015 IL 118110, ¶ 19).

¶ 50    We find no abuse of discretion here in the trial court's denial of Rule 137 sanctions. As discussed above, Rubin's pleading of its *quantum meruit* cause of action was sufficient to survive dismissal with prejudice, and we cannot say that Rubin's breach of contract claim was an egregious case of a party asserting a claim premised on unsupported allegations of fact or law or that there was no objectively reasonable basis for its pleadings.

¶ 51    Finally, Panzarella argues the trial court abused its discretion in striking portions of his reply to Rubin's response to his motion for sanctions, contending the stricken matters were related to and responsive to matters raised by Rubin in its response. According to the record, the trial court struck Panzarella's new affidavit, portions of his reply and certain exhibits to his reply, finding that he failed to state his claims of false pleading in his original petition for sanctions so that Rubin would have had an opportunity to challenge the allegations. Based on our ruling that Rubin has forfeited review of its breach of contract claim and pled a *quantum meruit* claim sufficient to survive a motion to dismiss, we need not address Panzarella's assertion that the trial court erred in striking portions of his reply to Rubin's response to his motion for sanctions.

¶ 52                           III.   CONCLUSION

¶ 53    We hold that Rubin has forfeited review of the circuit court's dismissal of Rubin's breach of contract claim. Further, we hold that the trial court erred in dismissing Rubin's *quantum meruit* claim and denying Rubin leave to amend its *quantum meruit* and unjust enrichment claims, and we remand this cause to the trial court so that Rubin may proceed on those claims. We affirm the trial court's denial of Panzarella's request for sanctions.

¶ 54    Affirmed in part and reversed in part; cause remanded.